NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0020n.06
Filed: January 8, 2008

Case No. 06-4593

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| **v.** | ) | **COURT FOR THE SOUTHERN** |
| | ) | **DISTRICT OF OHIO** |
| **WALTER L. DAULTON,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE:     BATCHELDER and GILMAN, Circuit Judges; and VARLAN, District Judge[*]

THOMAS A. VARLAN, District Judge. Defendant Walter L. Daulton was sentenced to a term of imprisonment of 46 months for preparing fraudulent tax returns. On appeal, Daulton argues that (1) the district court erred in permitting the government to introduce evidence of other acts that were not charged in the indictment; (2) the district court violated Daulton's constitutional rights by not allowing him to introduce evidence that he prepared other returns that were not fraudulent; (3) the district court's tax-loss calculation was clearly erroneous and should have been determined under a heightened burden of proof; (4) the district court erred in applying an enhancement for sophisticated means; and (5) the district

_____

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

court's application of the harsher Guidelines in effect at sentencing rather than those in effect at the time of the offense violates the *Ex Post Facto* and Due Process Clauses. For the reasons that follow, we **AFFIRM** the judgment of the district court.

## I. Background

At all relevant times, Walter L. Daulton operated Daulton's Tax Service (a.k.a. "Daulton's Income Taxes" and "Daulton's Truck Tax Systems, LLC"), a tax preparation business that specialized in preparing tax returns for truck drivers. As a former truck driver himself, Daulton advertised that he was able to get his clients larger refunds because he was particularly familiar with the deductions truck drivers frequently make.

The record indicates that Daulton told his clients that they were entitled to certain deductions regardless of whether they incurred the expenses, even though he knew that deductions must be based on actual expenses. Daulton would tell his clients that they were allowed to take per diem deductions for certain items and services, including tarping and untarping fees, costs for bedding and truck washes, shower fees, and other purchases related to trucking. He instructed his employees to use a formula for computing these deductions based on the number of weeks worked or loads driven rather than using actual expenses. On one occasion, after a client told Daulton that he did the tarping himself, Daulton stated, "I didn't hear you say that."

On February 18, 2004, Daulton was indicted on ten counts of aiding or assisting in the preparation or filing of false federal income tax returns in violation of 26 U.S.C. § 7206(2) for returns he prepared for the years 1997 and 1998. On September 15, 2004, Daulton was

2

indicted on eight additional counts. A jury convicted Daulton of counts 1-10 and counts 12-18 on April 28, 2005. On December 1, 2006, the district court sentenced Daulton to 46 months' imprisonment followed by one year of supervised release.

At trial, the district court permitted the government to introduce evidence from clients regarding tax returns that were not the subject of the indictment, but included fraudulent deductions and statements of Daulton's former employees whom he trained to prepare tax returns. The court admitted this evidence on the basis that it was intrinsic evidence. Additionally, the court noted that even if the evidence was extrinsic, it was admissible to show intent, preparation, plan, knowledge, or absence of mistake. Daulton then sought to introduce testimony from clients who had their tax returns prepared by Daulton's Tax Service for several years and whose returns never included false deductions. The court did not allow Daulton to present such evidence, finding it irrelevant and potentially confusing to the jury. In calculating the tax-loss, the court looked at tax returns listed in the indictment, returns of testifying witnesses that were not listed in the indictment, returns of Daulton's clients who were interviewed and audited before trial but not called as witnesses, including those interviewed by the IRS, amended returns prepared by Daulton's Tax Service and rejected by the IRS, and a return audited during trial. The district court found a total loss of $326,375. The court considered the advisory sentence range under both the 1998 and 2005 Sentencing Guidelines Manuals and relevant factors under 18 U.S.C. § 3553 in imposing Daulton's sentence.

## II. Admission of Rule 404(b) Evidence

3

Daulton argues that the district court erred in permitting the government to introduce evidence of other acts not charged in the indictment. This court reviews the district court's determination of whether other-act evidence is admissible for a lawful purpose *de novo*. *United States v. Weinstock*, 153 F.3d 272, 277 (6th Cir. 1998). We review a district court's determination that the probative value is not substantially outweighed by its unfairly prejudicial effect for an abuse of discretion. *Id.*

Rule 404(b) prohibits the use of extrinsic evidence of other crimes, wrongs, or acts in order to show that a person acted in conformity therewith. Fed. R. Evid. 404(b); *see also United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995). This court has determined that Rule 404(b) does not apply when the other-acts evidence is intrinsic or part of a continuing pattern of illegal activity or where it is "'inextricably intertwined' with evidence of the crime charged in the indictment." *Barnes*, 49 F.3d at 149. Evidence is inextricably intertwined when the charged conduct and the uncharged conduct "are part of the a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990).

The district court determined that the other-act evidence was intrinsic to the charged offenses as part of a continuing criminal episode and therefore not within the scope of Rule 404(b). The other-act evidence that was admitted at trial includes statements of clients regarding preparation of returns for years not included in the indictment, statements by Daulton in various media forms, including his advertising videotapes, and statements of former employees of Daulton's Tax Service who testified regarding the procedures the

4

defendant instructed them to follow in preparing returns. For some clients, the indictment only included returns from the years 1997 and 1998; however, many of the defendant's clients had been using his services since 1996 and earlier. It was therefore necessary for these witnesses to testify about the preparation of their tax returns for years outside of those charged in the indictment because that is when their initial meeting with Daulton occurred in which he explained his methodology and gathered information from the clients.

Daulton's promotional video shows his emphasis on taking deductions, including suggestions that truck drivers are automatically entitled to take a certain amount of deduction for some items and services. The testimony of Daulton's former employees included information about Daulton's general practices, including that the defendant did not ask or instruct his employees to ask clients about their actual expenses, but rather calculated deductible expenses using a formula based on the number of weeks worked or loads driven. Such evidence provides background information for understanding the fraudulent deductions on the returns charged in the indictment and therefore is intrinsic evidence.

Daulton argues that, because he was not charged with a conspiracy or scheme to defraud, the other acts cannot be admissible as part of a single criminal episode. Conspiracy does not need to be charged for the court to admit evidence as part of the same criminal episode. *United States v. Toney*, 161 F.3d 404, 413-14 (6th Cir. 1998). This additional information offered by the government sheds light on the charged conduct by revealing the procedures Daulton used to prepare his clients' returns. Because the other acts are so closely

5

related to the charged acts, the district court was correct in finding that they are intrinsic and therefore Rule 404(b) is not implicated.

Even if the district court erred in concluding that the other-acts evidence was intrinsic, it correctly noted that such evidence would be admissible for purposes other than showing behavior in conformity therewith. When evidence of other crimes, wrongs, or acts is extrinsic, it is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Weinstock*, 153 F.3d at 277. The evidence offered was of the nature to show Daulton's methods for preparing tax returns. Testimony of clients as well as Daulton's promotional videotapes demonstrate Daulton's preparation and plan for including false deductions. Testimony regarding formulas he instructed his employees to use shows intent and absence of mistake. Therefore, such evidence would not be excluded by Rule 404(b).

Daulton additionally argues that admitting this evidence was unfairly prejudicial because it lessened the government's burden of proof on each count. The court may exclude any evidence if its probative value is substantially outweighed by its risk of having an unfairly prejudicial effect. Fed. R. Evid. 403. Evidence is not unfairly prejudicial simply because it provides more support for a conclusion that the defendant committed the crime. It is unfairly prejudicial if it serves to "inflame the passions of the jury" and causes them to ignore the evidence. *United States v. Whittington*, 455 F.3d 736, 739-40 (6th Cir. 2006); *United States v. Thomas*, 49 F.3d 253, 258-59 (6th Cir. 1995). "[U]sually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect."

6

Fed. R. Evid. 403 cmt. Here, evidence of Daulton's regular practices in his business demonstrated by testimony of his clients and former employees was highly probative and did not serve to inflame the jury's emotions against Daulton. Although this evidence may have supported the government's case and therefore helped the government reach its burden of proof, it did not lessen the burden of proof. Therefore, the court properly refused to exclude such evidence.

### III. Exclusion of Reverse Rule 404(b) Evidence

Daulton argues that he should have been permitted to present evidence of non-fraudulent tax returns prepared by Daulton's Tax Service. A district court's determination of admissibility based on relevance and prejudice is reviewed for an abuse of discretion and will not be overruled lightly. *United States v. Jackson-Randolph*, 282 F.3d 369, 376 (6th Cir. 2002). Reversal due to an exclusion of evidence under Rule 404(b) is appropriate only if this court is "firmly convinced of a mistake that affects the substantial rights and amounts to more than harmless error." *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 187 (6th Cir. 2004) (citation and quotation marks omitted).

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 319 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). "[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." *United States v. Dobbs*, 506 F.2d 445, 447 (6th Cir. 1975) (finding that the district court's exclusion of evidence of noncriminal conduct in the preparation of some tax returns was appropriate); *see also*

7

*Derango v. United States*, 18 F.2d 778, 778 (6th Cir. 1927) (excluding testimony that the accused had refused to commit similar crimes to the crimes charged on other occasions). Evidence of noncriminal activities "would only be relevant if the indictment charged the defendants with ceaseless criminal conduct." *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990).

Daulton argues that the district court's exclusion of evidence of instances when he prepared non-fraudulent returns violated his constitutional right to present a defense. Daulton sought to introduce testimony from seven clients whose tax returns he prepared without false deductions. The district court excluded this evidence as irrelevant and immaterial to whether Daulton prepared the eighteen false returns listed in the indictment. Daulton argues that because the government was permitted to present evidence of acts outside the indictment to show a common scheme, he should be able to negate such evidence with evidence of noncriminal acts. In *Dobbs*, this court found noncriminal conduct irrelevant because the defendants were charged with separate instances of criminal conduct and not a scheme. 506 F.2d at 447. Similarly, Daulton was charged with separate instances of preparing fraudulent tax returns. The government did not contend that the defendant always engaged in criminal activity when preparing tax returns, but rather that the defendant had a method for maximizing refunds by including deductions for expenses that were not incurred. Therefore, the proffered evidence of instances when Daulton prepared truthful returns is irrelevant to the charged instances.

8

Daulton argues that the government tried his case like a conspiracy by using evidence not charged in the indictment and by including charges for returns that were not prepared by him personally but instead by his employees. Although this argument may make the overall decision regarding whether the defendant should have been permitted to present the proffered evidence a close question, any error in excluding such evidence was harmless.

"An error is harmless unless one can say, with fair assurance that the error materially affected the defendant's substantial rights–that the judgment was substantially swayed by the error." *United States v. Murphy*, 241 F.3d 447, 453 (6th Cir. 2001). This court must determine whether an error is harmless in light of all other evidence presented at trial and not by looking at the evidence in isolation. *Id.* When there is overwhelming evidence of the defendant's guilt, admission of Rule 404(b) evidence is harmless. *Id.* Similarly, when there is overwhelming evidence of defendant's guilt, exclusion of reverse Rule 404(b) evidence is harmless. *See United States v. Hayes*, 219 Fed. App'x 114, 120 (3d Cir. 2007) (citing *United States v. Casoni*, 950 F.2d 893, 902 (3d Cir.1991)) (applying the same rule to reverse 404(b) evidence).

In *Hayes*, the court determined that the error was not harmless when the district court stated on the record that if the excluded evidence was admitted at trial and the jury believed it, the jury would be forced to find the defendant not guilty. 219 Fed. App'x at 120. We do not have the same case here. Daulton was seeking to produce evidence that, on occasions other than those charged, he prepared non-fraudulent tax returns. But even if the district court had considered and believed such evidence, it would have proved only that Daulton did

9

not always include false deductions on his clients' tax returns. Because this conclusion does not negate Daulton's guilt for the charged acts, we cannot say that judgment would have been swayed by the evidence. Therefore, any error in excluding the evidence of Daulton's good acts was harmless.

## IV. Tax-Loss Calculation

Daulton contests the district court's tax-loss calculation for sentencing purposes and argues that it should have been determined under a heightened burden of proof. We review the district court's legal interpretations of the Sentencing Guidelines *de novo*. *United States v. Gale*, 468 F.3d 929, 934 (6th Cir. 2006). This court must affirm the factual findings at sentencing as long as they are reasonable and not clearly erroneous. *Id.*

In determining the government's loss for sentencing purposes, "[t]he guidelines require a district court to make a reasonable estimate, which may be founded on general factors such as the nature and duration of the fraud." *United States v. Milligan*, 17 F.3d 177, 183 (6th Cir. 1994) (citing U.S.S.G. § 2F1.1 cmt. n.8). "Loss need not be determined with precision." *Id.* The amount of loss is based on the loss the defendant intended to inflict and not the government's actual loss. *United States v. Kraig*, 99 F.3d 1361, 1370-71 (6th Cir. 1996) (citing *United States v. Moore*, 997 F.2d 55, 60 (5th Cir. 1993)).

The Guidelines permit the use of uncharged conduct in calculating the tax-loss. U.S.S.G. § 1B1.3(a)(2); *United States v. Pierce*, 17 F.3d 146, 150 (6th Cir. 1994). "In determining total tax-loss attributable to the offense . . . all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless

10

the evidence demonstrates that the conduct is clearly unrelated." U.S.S.G. § 2T1.1 cmt. n.2. Additionally, hearsay evidence may be used to calculate tax-loss for sentencing purposes. *United States v. Stone*, 432 F.3d 651, 654 (6th Cir. 2005).

IRS Revenue Agent Bridges testified as an expert that the IRS's total tax-loss was $337,979. She testified that this calculation was based on the tax-loss found by the jury, tax-loss for additional tax returns of testifying witnesses, tax-loss for non-testifying taxpayers who were interviewed or audited by the IRS during the investigation, tax-loss for taxpayers whose returns contained the same type of deductions the jury found fraudulent, attempted tax-loss on rejected returns, and tax-loss for a post-indictment client who admitted to false items on his return. The district court adopted Agent Bridges's tax-loss calculation less the tax-loss for a taxpayer who died before he could be interviewed by the IRS and less part of the tax-loss of a taxpayer who settled with the IRS for a lesser amount. The court therefore found, "based upon a preponderance of the reliable evidence and testimony, that the Government has established a tax-loss of $326,375." The figure the court reached was based on the tax-loss calculated by an expert in the field and adjusted by the court for reliability. We cannot conclude that this figure was clearly erroneous.

The district court used a preponderance-of-the-evidence standard to calculate the tax-loss. Daulton argues that a higher standard of proof should have been applied to the loss calculation in this case because of the large amount of relevant conduct and the district court's reliance on hearsay information. Generally, the sentencing court "only need[s] to determine the amount of loss by a preponderance of the evidence." *United States v.*

11

*Blackwell*, 459 F.3d 739, 772 (6th Cir. 2006). "[I]n extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence." *United States v. Watts*, 519 U.S. 148, 156 (1997) (per curiam). This court has affirmed use of a preponderance-of-the-evidence standard for findings of loss that resulted in a base-level increase much more than two levels. *United States v. Triana*, 468 F.3d 308, 320-21 (6th Cir. 2006) (upholding a sixteen-level enhancement). Relevant conduct in this case did not dramatically increase Daulton's sentence because the tax-loss calculation increased Daulton's base-offense level by only two levels, from 16 to 18. *See* U.S.S.G. § 2T4.1(F), (G). The increase does not justify departure from the preponderance-of-the-evidence standard generally applied.

## V. Sophisticated Means Enhancement

Daulton argues that his sentence should not have been enhanced for the use of sophisticated means in the commission of his fraud. Pure factual questions underlying a sentencing enhancement are reviewed for clear error. *United States v. Pierce*, 17 F.3d 146, 151 (6th Cir. 1994). Application of the Guidelines to a specific set of facts is reviewed *de novo*. *Id.*

The Guidelines provide for a two-level enhancement to a defendant's base-offense level for use of sophisticated means in a tax fraud case. U.S.S.G. § 2T1.1(b)(2). "Sophisticated means" is defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id.* at cmt. n.4. Even when each of a defendant's actions viewed in isolation may not be enough to constitute

12

sophisticated means, taken as a whole, they may reveal a sophisticated attempt to deceive the government. *United States v. Tandon*, 111 F.3d 482, 491 (6th Cir. 1997).

The district court found that Daulton's use of promotional videotapes and expense organizers suggesting calculated amounts for certain types of expenses were "sufficiently planned and complex" to constitute sophisticated means. In *Pierce*, this court found that the defendant used sophisticated means when, in addition to simply lying on his 1040 form, he also provided false information to his employer, used multiple mailing addresses and aliases, and instructed his wife to file misleading returns. 17 F.3d at 151. Similarly, Daulton did not simply lie on his clients' tax forms; he also used his specialized knowledge of the trucking industry in order to calculate and list deductions for expenses common in the trucking industry but not actually incurred by his clients, instructed his employees on the use of formulas for calculating expenses that were not actually incurred, gave clients organizers to record expenses that made falsification harder to detect, and made a promotional video advertising his ability to get particularly high refunds.

Daulton's use of specialized knowledge of the trucking industry was particularly relevant. In *United States v. Aragbaye*, the Ninth Circuit affirmed an enhancement based on sophisticated means for a defendant who "made use of tax credits that the average taxpayer would not be knowledgeable about." 234 F.3d 1101, 1108 (9th Cir. 2000). Daulton asserted that he did not take deliberate steps to make detection of the false deductions difficult. However, by listing common deductions, Daulton made the falsity less obvious. Because the

13

district court had a basis for concluding that Daulton used sophisticated means, the two-level sentencing enhancement was not in clear error.

Daulton also argues that the district court erred in using enhancements for both being in the business of tax preparation and using sophisticated means because doing so amounts to double counting. There is no legal support for this argument because the two categories are not mutually exclusive. *United States v. Hunt*, 25 F.3d 1092, 1098 (D.C. Cir. 1994) (noting there is "no reason why these two enhancements cannot exist in the same case. It is possible for a tax preparer to conduct a simple scheme and a nonpreparer to conduct a complex one."); *see also United States v. Ambort*, 405 F.3d 1109, 1119-20 (10th Cir. 2005) (affirming a sentence that included enhancements for both preparation and sophisticated means); *Aragbaye*, 234 F.3d at 1106-08 (same). Daulton was a tax preparer who engaged in means beyond simply lying on the returns to secure larger refunds. As such, he was eligible for an enhancement under both categories.

## VI.  Version of Sentencing Guidelines

Daulton argues that the district court erred in applying the 2005 Sentencing Guidelines Manual in violation of the *Ex Post Facto* Clause. Whether a defendant's sentence was imposed in violation of the *Ex Post Facto* Clause is a legal question that this court reviews *de novo*. *United States v. VanHoose*, 437 F.3d 497, 500 (6th Cir. 2006) (citations omitted). Factual findings are reviewed for clear error. *United States v. Pierce*, 17 F.3d 146, 151 (6th Cir. 1994). We review the district court's sentence based on application of the consulted Guidelines for reasonableness. *United States v. Davis*, 397 F.3d 340, 346 (6th Cir. 2005).

14

"The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a). This rule generally applies unless it would result in a violation of the *Ex Post Facto* Clause. *United States v. Gardiner*, 463 F.3d 445, 462 (6th Cir. 2006). An *ex post facto* violation occurs when a law is retrospective and it harms the offender. *Weaver v. Graham*, 450 U.S. 24, 29 (1981). A law is retrospective if it "changes the legal consequences of acts completed before its effective date." *Davis*, 397 F.3d at 347. "The application of a particular version of the Guidelines is retrospective if the version went into effect after the last date of the offense of conviction." *United States v. Kilkenny*, 493 F.3d 122, 127 (2d Cir. 2007). While the *Ex Post Facto* Clause generally applies only to legislatures, the Due Process Clause of the Fifth Amendment prohibits the judiciary from punishing the defendant if the defendant did not have fair notice that such punishment was possible due to *ex post facto* concerns. *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964).

Daulton argues that his sentencing violated the *Ex Post Facto* Clause because the district court retroactively applied the 2005 Guidelines. Considering the district court's discussion of both the 1998 and the 2005 Guidelines at sentencing, we cannot reach that same conclusion. A district court has discretion to consider updates to the Guidelines Manual in determining an appropriate sentence. *United States v. Meyer*, 452 F.3d 998, 1001-02 (8th Cir. 2006) ("While our court cannot retrospectively apply enhancing amendments to the guidelines in order to calculate the defendant's guidelines range, such amendments are instructive as to whether a sentence outside of the guidelines falls within the range of reasonableness."); *United States v. Johnson*, 427 F.3d 423, 427 (7th Cir. 2005) (noting that

15

it is permissible to consider the version of the Guidelines in effect at sentencing "as one benchmark to gauge the reasonableness" of the sentence without implication of *ex post facto* concerns).

At the September 12, 2006 sentencing hearing, the government requested that the district court use the 2005 Sentencing Guidelines Manual. Daulton objected and filed a memorandum opposing the use of the 2005 Manual on the basis that to do so would amount to a violation of the *Ex Post Facto* Clause. The district court addressed the argument at the December 1, 2006 sentencing hearing and stated that it would use the 2005 Guidelines Manual to calculate the advisory guidelines range. Despite the district court's pronouncement that it would use the 2005 Manual, it is apparent from the court's further discussion of sentencing that the court considered the sentence under both the 1998 and the 2005 Manuals.

The court proceeded at sentencing by stating that it was following the guidelines in general rather than a particular version. As is required, the court considered factors relevant to sentencing under 18 U.S.C. § 3553 and then imposed the defendant's sentence of 46 months' imprisonment. At no point during this discussion of factors did the court mention either the 2005 or the 1998 version of the Sentencing Guidelines. We therefore cannot conclude that the district court relied exclusively on the 2005 Guidelines in violation of the *Ex Post Facto* Clause. The record indicates that the court considered both guideline ranges and imposed a sentence that is sufficient but not greater than necessary as is required by 18 U.S.C. § 3553(a). *See Rita v. United States*, 127 S. Ct. 2456, 2463 (2007). Because the

16

district court considered the 2005 Guidelines Manual in conjunction with the 1998 Manual, as it is permitted to do, there was no *ex post facto* violation.

Finally, any error in consideration of the 2005 Guidelines Manual was harmless. As discussed above, the district court considered the 1998 and 2005 Guidelines in tandem. There is no indication that the court gave greater weight to the 2005 Guidelines than the 1998 Guidelines. Under the 1998 Guidelines, the appropriate range was 37 to 46 months, while under the 2005 Guidelines, the appropriate range for Daulton's sentence was 41 to 51 months. Daulton was sentenced to 46 months' imprisonment, a sentence that falls within both ranges. This court affords a rebuttable presumption of reasonableness to sentences that fall within the Guidelines range. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). We have adopted this presumption, in large part, because the fact that the Sentencing Commission and a sentencing judge agree on an appropriate sentence "significantly increases the likelihood that the sentence is a reasonable one." *United States v. Liou*, 491 F.3d 334, 339 (6th Cir. 2007) (quoting *Rita*, 127 S. Ct. at 2463). Because the district court imposed Daulton's sentence only after considering the relevant factors under 18 U.S.C. § 3553 and the advisory range under both the 1998 and 2005 Guidelines, we conclude that any error in sentencing was harmless.

### VII. Conclusion

For all the reasons discussed above, we **AFFIRM** the judgment of the district court.

17

**RONALD LEE GILMAN, Circuit Judge, concurring**. I write separately because of a difference of opinion with my colleagues over the district court's exclusion of the "reverse 404(b)" evidence proffered by Daulton. Daulton sought to introduce testimony by seven taxpayers in the truck-driving business who had their taxes prepared for many years by Daulton or his employees and who never had false deductions appear on their tax returns. The district court excluded this evidence, concluding that it was irrelevant and immaterial.

I fully agree with the principle that "evidence of noncriminal conduct to negate the inference of criminal conduct is *generally* irrelevant." *United States v. Dobbs*, 506 F.2d 445, 447 (6th Cir. 1975) (emphasis added). But there are, as Daulton notes, exceptions to this rule. On this score, Daulton points out that the government used evidence not charged in the indictment to show that he was involved in a continuing pattern of illegal activity. He therefore argues that he was entitled to present evidence that he prepared nonfraudulent tax returns during the relevant time period, which would counter the government's theory that he had a "method" for preparing fraudulent tax returns.

Under Rule 401 of the Federal Rules of Evidence, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Ev. 401. Daulton's defense was that his clients either gave him incorrect information or that he mistakenly included incorrect deductions, but that he did not instruct his employees to put false deductions on the clients' tax returns. Testimony that Daulton prepared at least some nonfraudulent tax returns for his clients in the truck-driving business would thus bolster Daulton's defense that, contrary to the government's theory, he did *not* have a method for fraudulently preparing tax returns. I therefore believe that the evidence Daulton sought to introduce was relevant and material to his defense.

Moreover, I believe that such evidence should have been admitted as "reverse 404(b)" evidence to corroborate Daulton's defense that he did not have a *modus operandi*, and that the fraudulent returns were actually the product of a mistake or accident. *See United States v. Robinson*, 2007 WL 4153412, at *7 (6th Cir. Nov. 19, 2007) (explaining that Rule 404(b) "contemplates" prior-act evidence "being offered as exculpatory evidence by the defendant as 'reverse 404(b) evidence'") (quoting *United States v. Lucas*, 357 F.3d 599, 605 (6th Cir. 2004)). For these reasons, I believe that the district court erred in excluding the evidence proffered by Daulton.

But as the majority correctly acknowledges, "[w]e review the district court's exclusion of evidence for abuse of discretion, and reverse only if we are firmly convinced of a mistake that affects substantial rights and amounts to more than harmless error." *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 187 (6th Cir. 2004). The very fact that there is disagreement between myself and my colleagues on this issue is presumably enough to show that the district court did not abuse its discretion in excluding the evidence proffered by Daulton. *See Merriweather v. Family Dollar Stores, Inc.*, 103 F.3d 576, 584 (7th Cir. 1996) ("If reasonable persons can disagree on a district court's actions, there is no abuse of discretion."). I therefore concur despite what I believe was an evidentiary error by the district court.