RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0177p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────



UNITED STATES OF AMERICA,

                  *Plaintiff-Appellee*,

     *v.*

SCOTT A. CHAPPELLE,

                  *Defendant-Appellant*.

No. 22-1969

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:20-cr-00079-1—Jane M. Beckering, District Judge.

Argued:  June 15, 2023

Decided and Filed:  August 15, 2023

Before:  MOORE, McKEAGUE, and MATHIS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Timothy D. Belevetz, ICE MILLER LLP, Washington, D.C., for Appellant.
Hannah Cook, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee.  **ON BRIEF:**  Timothy D. Belevetz, ICE MILLER LLP, Washington, D.C., Meredith
Wood, Jessa DeGroote, ICE MILLER LLP, Indianapolis, Indiana, Jacob Christian Chappelle,
Samuel S. Chappelle, COVENANT LAW GROUP, East Lansing, Michigan, for Appellant.
Hannah Cook, S. Robert Lyons, Katie Bagley, Joseph B. Syverson, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.    Scott Chappelle pleaded guilty to tax evasion and was sentenced to 38 months' imprisonment.  On appeal, Chappelle argues that the district court erred in two respects when computing his offense level under the Sentencing Guidelines.  First, he asserts that the district court miscalculated his tax loss under U.S.S.G. §§ 2T1.1 and 2T4.1.  Second, he contends that the district court erroneously found that his offense involved sophisticated means under U.S.S.G. § 2T1.1(b)(2).  We **AFFIRM**.

## I. BACKGROUND

**A.  Factual Background**

Chappelle operated several real estate companies in East Lansing, Michigan.  R. 131 (Plea Agreement ¶ 6(a)) (Page ID #512–13); R. 138 (PSR ¶ 17) (Page ID #644).  Between 1997 and 2009, he managed a real estate company called Terra Management.  R. 138 (PSR ¶ 17) (Page ID #644).  Over that period, Chappelle was required to withhold federal income, Social Security, and Medicare taxes—which are known collectively as "trust fund taxes," *Slodov v. United States*, 436 U.S. 238, 243 (1978)—from Terra Management's employees' wages, and to deliver the withheld trust fund taxes to the IRS.  *See* 26 U.S.C. §§ 3102, 3402, 7501.  Chappelle complied only in part.  He withheld the trust fund taxes, but he failed to turn them over to the IRS between 2007 and 2009.  R. 131 (Plea Agreement ¶ 6(b)) (Page ID #513); R. 138 (PSR ¶ 34) (Page ID #650).

The IRS initially attempted to collect the unpaid trust fund taxes, as well as associated penalties and interest, from Terra Management.  *See* R. 138 (PSR ¶¶ 33–35) (Page ID #650).  But when that did not work, the IRS tried to collect the taxes, penalties, and interest—which we refer to collectively as the trust fund taxes or the taxes—directly from Chappelle by imposing "trust fund recovery penalties."  *Id.*  Trust fund recovery penalties are "a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over" that the IRS may recover from "[a]ny person required to collect, truthfully account for, and pay over any tax

imposed by" the Internal Revenue Code. 26 U.S.C. § 6672(a). These penalties effectively hold certain employers jointly and severally liable for their organizations' trust fund taxes. In Chappelle's case, the trust fund recovery penalties were equal to Terra Management's unpaid trust fund taxes.

Chappelle willfully attempted to evade the trust fund recovery penalties. R. 131 (Plea Agreement ¶ 6(c)) (Page ID #513–14). He submitted four forms to the IRS that misstated his income and assets. *Id.* (Page ID #514). He used business funds to make mortgage, college tuition, and insurance payments, to pay off personal credit-card bills, and to cover car and boat expenses. *Id.* And he purchased a vacation home in Harbor Springs, Michigan, a condominium in Lansing, Michigan, and a house in Powell, Ohio—all in others' names rather than his own. *Id.*

Chappelle repeated this cycle between 2009 and 2016. In 2009, Chappelle closed Terra Management and opened Strathmore Development Company. R. 138 (PSR ¶ 17) (Page ID #644). He subsequently failed to pay Strathmore Development's trust fund taxes and then willfully evaded the taxes. R. 131 (Plea Agreement ¶ 6(d)–(e)) (Page ID #514–15). He submitted another false form to the IRS that failed to disclose affiliated business entities, he deposited checks that were payable to Strathmore Development into a bank account registered to a company called Terra Holdings, and he ultimately shuttered Strathmore Development and began operating under the name Terra Holdings. *Id.* (Plea Agreement ¶ 6(e)) (Page ID #515). He later closed Terra Holdings in 2016 and began operating as Chappelle Development Company. R. 138 (PSR ¶ 17) (Page ID #644). "Each time [Chappelle] changed the name of his company, he moved the affiliated assets, making them unavailable to the IRS to satisfy outstanding tax debts." *Id.*

In May 2016, Chappelle learned that he was under criminal investigation when he was interviewed by two IRS special agents. *See* R. 131 (Plea Agreement ¶ 6(f)) (Page ID #516). During the interview, Chappelle made two false statements. He first claimed that he had not purchased any real property in the past three years. *Id.* In fact, Chappelle had purchased his condominium in Michigan less than a year earlier and his home in Ohio one month earlier. *Id.* Chappelle also told the special agents that he and his wife had purchased the Michigan

condominium for their son to live in and that the mortgage on the property was paid for primarily with their son's student loans. *Id.* Neither aspect of the statement was true. *Id.*

While still under investigation, Chappelle submitted still another false form to the IRS. *Id.* ¶ 6(g) (Page ID #516–17). This time, he represented that "Terra Holdings did not have any employees and did not pay any wages during the third quarter of 2016." *Id.* (Page ID #517). Chappelle knew that the representation was false. *Id.* He also claimed that Terra Holdings was entitled to a tax refund and asked that the refund be applied toward the outstanding tax liabilities of Terra Management. *Id.* In fact, however, Terra Holdings owed additional taxes. *Id.*

## B. Procedural Background

Chappelle was charged in an eight-count indictment in June 2020. R. 1 (Indictment ¶¶ 33–49) (Page ID #13–21). Later, Chappelle entered into a plea agreement and pleaded guilty to the first count of the indictment, which charged him with "willfully attempt[ing] to evade and defeat the payment of the Trust Fund Recovery Penalties, and associated penalties and interest, due and owing by him to the United States as a responsible person for Terra Management for the first quarter of 2008 through the second quarter of 2009," in violation of 26 U.S.C. § 7201. R. 1 (Indictment ¶ 34) (Page ID #13–14); *see* R. 131 (Plea Agreement ¶ 1) (Page ID #507).

Chappelle's presentence report found that his base offense level was 22 based on a total tax loss of $1,636,228.28. R. 138 (PSR ¶ 112) (Page ID #666); *see* U.S.S.G. §§ 2T1.1, 2T4.1. The presentence report also recommended that the district court increase Chappelle's offense level by two levels for his use of sophisticated means. R. 138 (PSR ¶ 113) (Page ID #667); *see* U.S.S.G. § 2T1.1(b). Chappelle objected to both aspects of the presentence report. R. 140 (Def. Sent'g Mem. at 1) (Page ID #766); R. 143 (Def. Notice of Revision at 1) (Page ID #888).

The district court overruled Chappelle's objections. Finding that Chappelle's total tax loss was $1,636,228.28, the district court began with a base offense level of 22. R. 149 (Sent'g Tr. at 21:4–7) (Page ID #926). The district court then added two levels for Chappelle's use of sophisticated means, but subtracted three levels for his acceptance of responsibility. *Id.* at 33:7–22, 35:5–16 (Page ID #938, 940). The district court concluded that Chappelle's final adjusted offense level was 21 and that his guideline range was 37 to 46 months. *Id.* at 35:15–20 (Page ID

#940).  After considering the 18 U.S.C. § 3553(a) factors, the district court sentenced Chappelle to 38 months' imprisonment.  *Id.* at 58–63 (Page ID #963–68); R. 145 (Judgment at 2) (Page ID #892).  Chappelle now appeals.  R. 148 (Notice of Appeal at 1) (Page ID #905).

## II.  ANALYSIS

### A.  Tax Loss

Chappelle argues that the district court miscalculated his tax loss, leading the court to use the wrong base offense level at sentencing.  "The government bears the burden to prove the amount of the loss by a preponderance of the evidence."  *United States v. Riccardi*, 989 F.3d 476, 481 (6th Cir. 2021).  We review the district court's method for calculating the tax loss de novo and the district court's factual findings for clear error.  *See United States v. Warshak*, 631 F.3d 266, 328 (6th Cir. 2010); *United States v. Jordan*, 544 F.3d 656, 671 (6th Cir. 2008).

In tax evasion cases, a defendant's base offense level is determined using § 2T1.1 of the Guidelines.  *See* U.S.S.G. § 2T1.1.  Under § 2T1.1, the first step in assigning a base offense level is assessing the total "tax loss" caused by the defendant.  *Id.* § 2T1.1(a)(1).  "If the offense involved tax evasion . . ., the tax loss is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)."  *Id.* § 2T1.1(c)(1).  When the defendant willfully evaded the taxes, the tax loss also includes associated penalties and interest.  *Id.* § 2T1.1 cmt. n.1.  Once the tax loss is assessed, the next step is to select a base offense level using the tax table in § 2T4.1, which assigns base offense levels in proportion to the tax loss.  *Id.* § 2T4.1.  For example, a tax loss of $2,500 or less corresponds to a base offense level of six, whereas a tax loss of more than $550,000,000 corresponds to a base offense level of 36.  *Id.*

Chappelle admits that he willfully evaded more than $1 million in trust fund taxes he owed to the IRS, but he argues that the district court made three errors that led it to conclude that his tax loss was $1,636,228.28.  When the errors are corrected, Chappelle argues, his tax loss amounted to only $1,482,628.06.  The difference between these two figures is significant:  under § 2T4.1, a tax loss of more than $1.5 million corresponds to an offense level of 22, whereas a tax loss of $1.5 million or less, but more than $550,000, corresponds to an offense level of 20.

Thus, had the district court found that Chappelle's tax loss was $1,482,628.06 (rather than $1,636,228.28), Chappelle's base offense level would have been 20 (not 22) and his initial guideline range would have been 30 to 37 months (not 37 to 46 months). *See* U.S.S.G. § 2T4.1, Ch. 5 Pt. A.

Chappelle first challenges the district court's tax-loss computation under Federal Rule of Criminal Procedure 32, which requires district courts to rule on "any disputed portion of the presentence report or other controverted matter" at sentencing.[1] Fed. R. Crim. P. 32(i)(3)(B). To trigger the district court's adjudicatory obligation, "the defendant must actively raise the dispute during the sentencing hearing[.]" *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007). "Once the defendant calls the matter to the court's attention, . . . the district court must affirmatively rule on [the] controverted matter where it could potentially impact the defendant's sentence." *Id.*

Chappelle's claim stems from an error he made on two quarterly payroll tax returns he filed for Terra Holdings—one for the third quarter of 2015 and the other for the fourth quarter of that year. *See* R. 140-2 (Form 941 for Q3 at 1–2) (Page ID #803–04); R. 140-3 (Form 941 for Q4 at 1–3) (Page ID #806–08). On the returns, Chappelle correctly listed the company's name as "Terra Holdings LLC." R. 140-2 (Q3 Form 941 at 1) (Page ID #803); R. 140-3 (Q4 Form 941 at 1) (Page ID #806). But he mistakenly entered the employer identification number for his prior company, Strathmore Development. R. 140 (Def. Sent'g Mem. at 3–4) (Page ID #768–69).

This error led the presentence report and the government to assert that Chappelle's tax loss should include $74,075.29 in unpaid taxes owed by Strathmore Development that were in fact owed by Terra Holdings. *See* R. 138 (PSR ¶ 95) (Page ID #663); R. 139-1 (Gov't Tax Loss Table at 1) (Page ID #738). Prior to sentencing, however, the government discovered the mistake. In its sentencing memorandum, the government explained that its original tax-loss computation "attribute[d] the loss . . . to Strathmore Development," but that the government now believed the loss was associated with Terra Holdings. R. 139 (Gov't Sent'g Mem. at 23 n.2) (Page ID #715). The government argued that the difference was immaterial because "[e]ither

---

[1]Chappelle does not cite Rule 32 in his briefing, but his argument and the cases he relies on to support it both suggest that he is asserting a Rule 32 claim. *See* Appellant Br. at 14–15; Appellant Reply Br. at 8.

way, the unpaid taxes for the[] two quarters [were] clearly part of the tax loss for purposes of the Guidelines calculation because they meet the definition of relevant conduct in U.S.S.G. § [1]B1.3(a)." *Id.*

Chappelle objected. He asserted in his written objections to the presentence report that a portion of Terra Management's unpaid taxes reflected a "posting mistake" made by the IRS. R. 136 (Def. Objs. to PSR at 6) (Page ID #580). In his sentencing memorandum, by contrast, he explained the mistake he had made when filling out Terra Holdings' tax returns and argued that "[b]ecause the government's tax loss computation does not include any loss associated with Terra Holdings' trust fund liabilities," the $74,075.29 in unpaid taxes associated with Terra Holdings should not be included in his tax loss. R. 140 (Def. Sent'g Mem. at 4) (Page ID #769).

The district court addressed Terra Holdings' unpaid taxes only briefly at sentencing. While reviewing the tax loss alleged by the government, the district court noted a tax loss of $74,075.29 between September and December 2015 owed by Strathmore Development. R. 149 (Sent'g Tr. at 18:10–16) (Page ID #923). The government explained to the district court that it "had corrected [its] memo[randum of law]. That should have read Terra Holdings." *Id.* at 18:17–18. In response, the district court remarked, "[t]hat's right. That makes more sense." *Id.* at 18:22.

Chappelle argues that the district court violated Rule 32 by failing to find at sentencing that the $74,075.29 in unpaid taxes associated with Terra Holdings constituted relevant conduct before counting them toward his tax loss.**[2]** We rejected an analogous Rule 32 claim in *United States v. McGee*, 529 F.3d 691 (6th Cir. 2008). McGee filed a sentencing memorandum "object[ing] to the relevancy and factual accuracy of" portions of his presentence report. *Id.* at 700. At his sentencing hearing, however, McGee "very clearly led the court to believe—whether intentionally or not—that his only objection was to the *relevancy,* and not the *veracity,* of the disputed portions of his" presentence report. *Id.* Given McGee's limited objection, we held that

---

**[2]**Chappelle's opening brief does not use this figure. *See* Appellant Br. at 11–13. Rather, Chappelle argues that the district court misattributed three amounts—$49,297.11, $19,935.67, and $13,750.32—that total $82,983.10. *Id.*; *see* R. 140 (Def. Sent'g Mem. at 3–4) (Page ID #768–69). The government, however, characterizes the figure as $74,075.29, *see* Appellee Br. at 17, and Chappelle echoes that figure in his reply brief, *see* Appellant Reply Br. at 8. The difference between the two amounts does not affect our legal analysis.

Rule 32 did not require the district court to rule on the veracity of the disputed portions of the presentence report. *Id.* at 701; *see also United States v. Welti*, 446 F. App'x 784, 787 (6th Cir. 2012).

Chappelle's claim fails for similar reasons. Upon reading Chappelle's objections to the presentence report and his sentencing memorandum, the district court would have known that there was at least a potential dispute about whether the $74,075.29 in unpaid taxes were associated with Strathmore Development or Terra Holdings. But that factual dispute was resolved when both the government and the district court adopted Chappelle's position on the issue at sentencing. *See* R. 149 (Sent'g Tr. at 18:14–22) (Page ID #923). By contrast, neither Chappelle's written submissions nor his sentencing presentation alerted the district court to the fact that he disputed whether Terra Holdings' unpaid liabilities constituted relevant conduct under U.S.S.G. § 1B1.3(a). Chappelle never raised the issue in his objections to the presentence report, in his sentencing memorandum, or at his sentencing hearing. Accordingly, Chappelle did not "actively raise the dispute" and the district court was not required to resolve it. *White*, 492 F.3d at 415.

Despite Chappelle's failure at sentencing to raise his dispute or to object to the district court's finding, he may be entitled to relief if the district court committed plain error. *See United States v. Wymer*, 654 F. App'x 735, 751 (6th Cir. 2016); *United States v. Harris*, 552 F. App'x 432, 440 (6th Cir. 2014); *United States v. Jallad*, 468 F. App'x 600, 605 (6th Cir. 2012). To establish plain error, Chappelle must "show (1) error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) affected the fairness, integrity, or public reputation of his judicial proceedings." *United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010).

The district court did not err when assessing Chappelle's relevant conduct. The district court was required to consider Chappelle's relevant conduct when determining his base offense level. *See* U.S.S.G. § 1B1.3(a). An application note to the Guidelines states that "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." *Id.* § 2T1.1 cmt. n.2; *see United States v. Lombardo*, 582 F. App'x 601, 619 (6th Cir. 2014). Measured against that standard, Terra Holdings' unpaid taxes and other liabilities were clearly

relevant conduct that the district court was required to consider when determining Chappelle's tax loss and base offense level.  Chappelle admitted that he "willfully attempted to evade and defeat the payment of Strathmore Development's" liabilities in part by "ceas[ing] operating his real estate business under the name Strathmore Development and beg[inning] operating under the name Terra Holdings."  R. 131 (Plea Agreement ¶ 6(e)) (Page ID #515).  He also admitted to filing a false tax return for Terra Holdings in September 2018.  *Id.* ¶ 6(g) (Page ID #516–17).  Given these admissions, the district court did not err in including Terra Holdings' unpaid taxes in Chappelle's tax loss.

Chappelle raises two additional challenges to the district court's tax-loss computation, but we decline to address either of them.  Chappelle's remaining challenges, if successful, would reduce his tax loss by $38,692 and $31,985.12, respectively.  *See* Appellant Br. at 12.  Even if Chappelle prevailed on both, his tax loss would still exceed $1.5 million and his base offense level would remain 22.  Thus, any error the district court may have made did not affect Chappelle's guideline range, was harmless, and "do[es] not require resentencing."  *United States v. Faulkner*, 926 F.3d 266, 275 (6th Cir. 2019); *United States v. Jenkins*, 821 F. App'x 504, 509 (6th Cir. 2020).

**B.  Sophisticated Means**

Chappelle also argues that the district court erroneously found that his offense involved sophisticated means, leading the court to increase his offense level by two under § 2T1.1(b)(2).

The standard we use to review a district court's application of the sophisticated-means enhancement to the facts of a particular case is unsettled.  In some cases, we have said that the standard of review is clear error.  *See United States v. Igboba*, 964 F.3d 501, 510 (6th Cir. 2020); *United States v. Simmerman*, 850 F.3d 829, 832 (6th Cir. 2017).  In others, we have said that the standard is de novo.  *See United States v. Daulton*, 266 F. App'x 381, 388 (6th Cir. 2008); *United States v. Butler*, 297 F.3d 505, 516 (6th Cir. 2002); *United States v. Pierce*, 17 F.3d 146, 151 (6th Cir. 1994).  And in one recent decision, we identified this inconsistency but declined to resolve it.  *See United States v. Rupp*, No. 22-1240, 2023 WL 370908, at *5 (6th Cir. Jan. 24, 2023).  We decline to weigh in on the issue here because the district court's application of the

sophisticated-means enhancement was appropriate whether it is reviewed de novo or for clear error.

When assessing whether a tax-evasion scheme like Chappelle's involved sophisticated means, we "do not look to the 'individual steps' of the scheme, but instead to 'the totality of the defendant's conduct.'" *United States v. Vysniauskas*, 593 F. App'x 518, 531 (6th Cir. 2015) (quoting *United States v. Masters*, 216 F. App'x 524, 526 (6th Cir. 2007)). Section 2T1.1 does not define "sophisticated means," but an application note states that "'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2T1.1 cmt. n.5. Sophisticated means, in other words, is conduct more complex than "simply l[ying] on a 1040 form." *Pierce*, 17 F.3d at 151. We have found that an offense involved sophisticated means where, as relevant here, the defendant used multiple financial accounts to hide or disguise transactions, *see United States v. Middleton*, 246 F.3d 825, 848 (6th Cir. 2001); *Lombardo*, 582 F. App'x at 620; *United States v. Clear*, 112 F. App'x 429, 431 (6th Cir. 2004), misused business or personal funds to avoid detection, *see Lombardo*, 582 F. App'x at 620; *United States v. Paul*, 57 F. App'x 597, 611 (6th Cir. 2003) (per curiam), and used third parties to carry out the tax offense, *United States v. Thomas*, 841 F. App'x 934, 938–39 (6th Cir. 2021); *Daulton*, 266 F. App'x at 389; *Clear*, 112 F. App'x at 431.[3]

The district court's finding that Chappelle's offense involved sophisticated means is consistent with our precedent. The district court examined the "totality" of Chappelle's conduct. R. 149 (Sent'g Tr. at 33:7–8) (Page ID #938). The district court observed that the "serial name changing and"—in its words—the "pyramiding scheme" of Chappelle's real estate companies, from "Terra Management to Strathmore [Development] to Terra Holdings to Chappelle [Development,]" evidenced sophisticated means. *Id.* at 33:9–12. The district court also found that "the complex nature of money flowing in and out from [Chappelle's] businesses to his private expenses" further demonstrated that Chappelle was using sophisticated means to evade his taxes. *Id.* at 33:12–17. And the district court concluded that although Chappelle's scheme

---

[3]We recognize that many of these decisions were decided under the clearly erroneous, rather than de novo, standard of review. We find the decisions to be informative nonetheless because they illustrate offense conduct that courts in this circuit have consistently found to involve sophisticated means.

could be "untangled," he had engaged in "a sophisticated effort through the use of corporate monies and entities to divert accountability[.]" *Id.* at 33:17–19. The district court's findings are supported by the record and are sufficient to show that Chappelle's offense involved sophisticated means.

Chappelle's arguments do not lead us to a different conclusion. He first argues that it is common, and indeed necessary, in the real-estate industry to use multiple business entities to hold real property. *See* Appellant Br. at 23. That may be true, but Chappelle used the entities in a sophisticated manner to carry out his tax-evasion scheme. He closed and opened four different real estate companies to evade the trust fund taxes he owed to the IRS. R. 131 (Plea Agreement ¶ 6(c)–(e)) (Page ID #513–15); R. 138 (PSR ¶ 17) (Page ID #644). While operating these companies, he filed false tax returns and paid personal expenses using business funds. R. 131 (Plea Agreement ¶ 6(c)) (Page ID #514). And each time that he changed his business's name, "he moved the affiliated assets, making them unavailable to the IRS to satisfy outstanding tax debts." R. 138 (PSR ¶ 17) (Page ID #644). The district court correctly found that Chappelle's use and manipulation of his businesses to evade the trust fund taxes evidenced sophisticated means.

Chappelle next argues that the enhancement was inappropriate because he never hid his ownership interest in the relevant real estate companies. We find the conduct Chappelle *did* engage in to be more pertinent: it is uncontested that he repeatedly opened and closed his companies to evade taxes and then misled the IRS about those businesses' finances. R. 131 (Plea Agreement ¶ 6(c)–(g)) (Page ID #513–15); R. 138 (PSR ¶¶ 34–36) (Page ID #650). Chappelle could have done more to evade his tax obligations, but the conduct he admitted to was sophisticated.

Lastly, Chappelle relies on an out-of-circuit district court decision, *United States v. Pangburn*, 467 F. Supp. 3d 1103 (D.N.M. 2020). Pangburn, an office manager for a labor union, was convicted of wire fraud. *Id.* at 1105–06. She "used her role in preparing payroll deposits for Local 953 to create additional, unauthorized deposits to her bank account" by "duplicat[ing] her weekly wage payments to herself in her own name." *Id.* at 1113. She attempted to avoid detection by relabeling the transactions in the accounting program, QuickBooks. *Id.* The district

court found that Pangburn "avoided detection for two months, not because of steps that she took, but rather because no one was monitoring the QuickBooks account." *Id.* at 1113–14. Chappelle's offense conduct is easily distinguishable. Chappelle opened and closed several different real estate businesses, submitted false tax forms, used business funds to finance his personal needs, purchased properties using others' names, and lied to IRS agents. R. 131 (Plea Agreement ¶ 6(b)–(g)) (Page ID #513–17); R. 138 (PSR ¶ 17) (Page ID #644). And he admitted that he engaged in each of these actions to evade the taxes he owed to the IRS. R. 131 (Plea Agreement ¶ 6(c)–(g)) (Page ID #513–17). Pangburn's offense was straightforward; Chappelle's was sophisticated. We therefore conclude that the district court did not err in applying the sophisticated-means enhancement.

## III.  CONCLUSION

For all these reasons, we affirm district court's judgment.