UNITED STATES of America, Plaintiff,

v.

CERTAIN LAND SITUATED IN the CITY OF DETROIT, WAYNE COUNTY, STATE OF MICHIGAN; The Detroit International Bridge Company, a Michigan corporation; Roy G. Lancaster, President; Nash P. Sogoian, and The Treasurer of the City of Detroit, Defendants.

Civ. A. No. 79–73934.

United States District Court, E. D. Michigan, S. D.

Sept. 20, 1982.

Leonard R. Gilman, U. S. Atty. by Mark R. Werder, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Van Til, Kasiborski & Ronayne, P. C. by Lawrence R. Van Til, John J. Ronayne, III, Kenneth A. Flaska, Detroit, Mich., Butzel, Long, Gust, Klein & Van Zile by George H. Zinn, Jr., Gregory V. Murray, Detroit, Mich., for defendants Detroit Intern. Bridge Co. and Roy G. Lancaster, President.

Killebrew, Ihrie & Short, Peter B. Short, St. Clair Shores, Mich., for defendant Nash P. Sogoian.

## OPINION

GILMORE, District Judge.

This case, which is a condemnation proceeding involving land adjoining the Ambassador Bridge Border Station in Detroit, is before the Court on a motion *in limine* by plaintiff United States, which asks this Court to determine defendants' appraisal to be inadmissible. For reasons given in this opinion, the Court denies the motion.

■ Any broad pretrial exclusion of evidence (here the defendants' entire appraisal) in an eminent domain proceeding, or any other proceeding, must be approached with great caution. Although the use of a motion *in limine* is authorized for federal courts,[1] its allowance by the trial court is purely discretionary and generally is confined to very specific evidentiary issues of an extremely prejudicial nature. As pointed out in *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975), cert. denied, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 303: "Orders *in limine* which exclude broad categories of evidence

---

1. Wright & Graham, *Federal Practice and Procedure: Evidence,* ¶ 5037.

should rarely be employed. A better practice is to deal with questions of admissibility of evidence when they arise."

■ There is even more reason to follow such an approach in an eminent domain case where the Fifth Amendment requires that "just compensation" be given for land taken by the government. And F.R.C.P. 71A(h) leaves to a jury, if properly demanded, and one has been demanded here, the issue of just compensation. Both the constitutional command and the right to jury trial require that a court be cautious in making broad pretrial rulings that could prejudice defendants' claim before allowing the jury to hear any evidence or before disputed facts can be put to normal evidentiary tests in open court.

■ The preference of this Court for deciding questions of admissibility at trial rather than through a pretrial motion *in limine* does not, of course, eliminate the Government's legal argument that certain uses proposed in defendants' appraisal are inadmissible as a matter of law. Nor does it mean that everything in defendants' appraisal will be heard by the jury. But it does mean that questions of admissibility of the appraisal will be passed on at trial when objections are raised in the proper trial context.

The Government's motion *in limine* raises six objections to the appraisal produced by defendant Detroit International Bridge Company (DBIC): 1) the appraisal is predicated on exploiting the government's specific need and intended purpose of operating a Custom's inspection station on the condemned land; 2) the proposed use purports to derive benefit from an exclusive license to provide a service attendant to Custom's inspection, and this license has been expressly denied; 3) the value of the land to DIBC is nontransferable and arises from its unique adaptability to defendants' intended use; 4) there is no combined holding or actual unitary use that could give rise to a legitimate claim for severance damages; 5) the appraisal assesses value as of a post-taking date; and 6) the appraisal's use of a capitalization of income method is too speculative.

The crucial and basic consideration in any eminent domain case is that private property shall not be taken without just compensation. The only standard of compensation mandated by the Fifth Amendment is that it be "just" which, in turn, "evokes ideas of fairness and equity". *See United States v. 320 Acres of Land More or Less In the County of Monroe, State of Florida,* 605 F.2d 762, 780 (5th Cir. 1980). Thus the only absolute standard in an eminent domain case is that of "just compensation" provided by the Constitution, and the only sure guide in a difficult case is the consideration of what compensation is "just" both to the owner whose property is being taken and the public. See *United States v. Commodities Trading Corp.,* 339 U.S. 121, 123, 70 S.Ct. 547, 549, 94 L.Ed. 707 (1950). The underlying principle is that the dispossessed owner "is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more." *Olson v. United States,* 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934).

A brief description of significant facts is necessary. Defendant DIBC owns the Ambassador Bridge connecting the United States with Canada, as well as the current bridge plaza on the U.S. side. The plaza, which was built in 1929, is incapable of handling the heavy traffic load. It is particularly congested because U.S. Customs requires approximately 50 percent of the trucks crossing the bridge to submit to a secondary inspection. This means that these trucks must pull over and park. Prior to the condemnation of the land in question, trucks were required to park on the present plaza to await secondary inspection, causing traffic congestion, long waits, and dangerous conditions.

The problem is demonstrated by the map of the location set forth below.

In 1975, DIBC purchased parcel A1, the land which is at the center of the dispute here, from Overland-Western Corporation. This parcel had been used by Overland-Western as a trucking terminal and had facilities for such. This is the land, along with parcel A2, also owned by DIBC, and parcel A3, owned by defendant Sogoian, which was condemned by the government.

Possession of the property was turned over to the General Services Administration on January 23, 1980. The property was to house a secondary inspection facility for U. S. Customs.

Central to the dispute here is the presence in defendants' appraisal of the "KNI proposal", which provides a basis for DIBC's view of what is just compensation.

Kuehne and Nagel, Inc. ("KNI") is an international trucking services company which in May of 1979 made a proposal to DIBC to lease parcel A1 from DIBC and establish a service for truckers crossing the Ambassador Bridge. There is a factual dispute as to the precise relationship of this service to U.S. Customs' secondary inspection process, but some kind of relationship was to exist. Truckers waiting secondary inspection were to drop off their trucks in parcel A1, and KNI personnel would prepare the truck for Customs inspection (unload the cargo, etc.). The trucker would then be able to avoid the long delays accompanying the present long waits for inspection. KNI was to charge a fee for such services and thus be compensated.

DIBC claims that just compensation requires the value of the KNI proposal to the DIBC be considered. The Government seeks to exclude this value completely and would base its just compensation on essentially the value of parcel A1 as a trucking terminal. It advances legal arguments in support of this view.

The Government argues that DIBC's appraisal assumes an income flow from the KNI operation that would depend on U.S. Customs relocating its inspection to parcel A1, with parcel A1 being under the ownership of DIBC. It contends that any value attributable to the presence of U.S. Customs in parcel A1 must be excluded as a matter of law under the rule of *United States v. Cors,* 337 U.S. 325, 69 S.Ct. 1086, 93 L.Ed. 1392 (1949), which held that special value to the government, a value created solely by the government's demand for property, is not compensable. *Cors* stands for the proposition that "hold-up" value to the government cannot be considered fair market value, and that the Government should not have to pay for a value which it, itself, created, for that is not a fair market value, because it does not reflect what a willing buyer would pay to a willing seller. There is nothing complicated about the *Cors* rule. It is simply an expression of the command that just compensation be fair both to the buyer and to the public as a whole.

Even if the appraisal contained elements of value based on the presence of U.S. Customs on parcel A1, this would not necessarily represent the special or extraordinary demand referred to in *Cors.* This is not an emergency situation, nor is national defense involved, and it is unclear at this point as to what "hold-up" value exists, if any at all. There is a clear factual dispute as to whether there is a "hold-up" value, and this dispute will have to be resolved through testimony at trial. DIBC, for example, has introduced affidavits which argue that the presence of customs was a preferred, but not a necessary, component of the KNI proposal, and that the KNI proposal for parcel A1 would have been able to work without the presence of U.S. Customs. Thus there is a factual dispute which must be decided through testimony at trial. If, after hearing all of the testimony, the Court finds that the presence of U.S. Customs is an essential part of the appraisal and that this constitutes "hold-up" value under *Cors,* the jury will be instructed not to consider any element of value based on the presence of U.S. Customs on parcel A1. But this issue cannot be resolved on a motion *in limine* prior to trial.

The Government next claims that a condemnee may not be compensated for the value of benefits conferred on his property because of its proximity to government property. This is the so-called "Fuller principle" announced in *United States v. Fuller,* 409 U.S. 488, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973). There the Court refused to allow a landowner to be compensated for the value of a revocable grazing permit given by the government which allowed the landowner to graze on government land. The Government argues that the situation is analogous here in that the proposed use by DIBC "purports to commercially appropriate the potential for defendant to derive parasitic benefit from Customs cargo inspection under an exclusive license or monopoly arrangement, consent to which has been expressly denied."

This argument offers no basis for granting the motion *in limine.* There is a clear

factual dispute. Defendant claims that no government license is required to use parcel A1 under the KNI proposal, and that no government consent is needed, whereas the government contends that the KNI proposal is illegal without governmental consent. It has presented affidavits from Eugene Mach, Regional Commissioner of U.S. Customs, stating that in his opinion the KNI proposal would violate 19 U.S.C. § 1451. This opinion, of course, is a pure legal conclusion entitled to no weight by this Court.

If there is no conclusive proof that a license or Governmental consent is necessary to implement the KNI proposal, the *Fuller* principle is not applicable. *Fuller* is to be narrowly construed to cases involving licenses or other governmental permits. The *Fuller* court itself limited this decision, and said it could not be pushed to its seemingly logical conclusion which would exclude any value attributable to land adjacent to public property by mere virtue of its proximity to public land:

> We believe that there is a significant difference between the value added to property by a completed public works project and for which the Government must pay and the value added to fee lands by a revocable permit authorizing the use of neighboring lands that the Government owns. The Government may not demand that a jury be arbitrarily precluded from considering as an element of value the proximity of a parcel to a post office building simply because the Government at one time built the post office.

*Id.* at 492–93, 93 S.Ct. at 804.

The Ambassador Bridge has been in existence since 1929, and U.S. Customs has had a station there since that time. There is no question that for more than 50 years the land adjacent to the bridge and the U.S. Customs station undoubtedly had value because of its proximity to the bridge. Nothing in *Fuller* suggests that this value should be excluded merely because of its proximity to Customs, nor would it be fair to do so. If there is no legal impediment to KNI offering the service proposed in the apprais-al, then the value does not depend on a Government license or permit. Instead, the value arises from the unique location of the land. If DIBC can show there is no legal impediment to the KNI proposal, *Fuller* is not applicable. The Government has not yet shown that such an impediment exists, and, therefore, this basis for granting the motion *in limine* is without merit.

The next claim is that DIBC's appraisal should be excluded because it represents a non-transferable value arising from a unique need predicated on a plan to integrate the existing bridge plaza with parcel A1. The Government relies on *Kimball Laundry Co. v. United States,* 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1940), which held that the loss to an owner of a non-transferable value deriving from his unique need for property or idiosyncratic attachment to it is properly treated as an aspect of the burden of common citizenship and not compensable. "The value compensable under the Fifth Amendment ... is only that value which is capable of transfer from owner to owner and thus of exchange for some equivalent." *Id.* at 1, 69 S.Ct. 1434. Once more, there is a clear factual dispute that must be resolved through testimony at trial. Defendant asserts in an affidavit that the value in its appraisal is attributable to fair market value, and that any purchaser could have obtained parcel A1 and used the KNI proposal in the same way that DIBC intended to use it. Unless evidence is introduced at trial showing that the proposal was non-transferable, the Court will not apply *Kimball Laundry* to this case. Therefore this contention serves no basis for granting the motion *in limine.*

The government next seeks to exclude DIBC's claim for severance damages. DIBC claims severance damages for parcels which it owns, but which have not been condemned, arguing that these parcels have lost value because of the condemnation, and that it should be compensated for this loss of value. The parcels involved are parcels B1, B2, and B3 on the map, *supra* at 683. Parcels B1 and B2 are presently owned in fee simple by DIBC, and parcel B3 repre-

sents a reversionary interest in 21st Street, presently owned by the City of Detroit. The appraisal seems to give special value to this reversionary interest because DIBC has an interest in both sides of 21st Street and claims it could have convinced the City of Detroit to close the street, thus completely integrating parcel A1 with the current bridge plaza, and presumably making the land even more valuable.

The government contends that severance damages cannot be granted unless the severed property was in actual unitary use with the condemned property at the time of the taking, citing *Cole Investment Co. v. United States,* 258 F.2d 203 (9th Cir. 1958). It claims that the parcels in question here were not in such unitary use and, therefore, severance damages cannot be granted. On the other hand, DIBC argues that the unitary use concept has not been universally accepted, citing *Baetjer v. United States,* 143 F.2d 391 (1st Cir. 1944). The test the Court will adopt here is that of *United States v. 105.40 Acres of Land, More or Less, Situate in Porter County, State of Indiana,* 471 F.2d 207 (7th Cir. 1972) which applied a "reasonableness" test. The Court there said the proper question to be asked was whether in the reasonably near future there was a reasonable probability that the lands in question would be put to their highest and best use in combination with the main tract so as to affect their market value. *Id.* 211.

This matter, again, must be resolved in trial. The Court will allow evidence of severance damages subject to a preliminary factual determination that DIBC has introduced evidence sufficient to support a finding under Federal Rules of Evidence 104(b) that there was a reasonable probability that the severed parcels would be put to a unitary use with parcel A1 in the near future. If the preliminary factual determination finds a sufficient basis, then evidence of severance damages will go in. If the preliminary factual predicate is not laid, then they will be excluded. This can only be decided at trial, and this portion of the motion *in limine* must be denied.

■ Next, the government seeks to exclude DIBC's appraisal because it claims the appraisal is based on a post-taking valuation. The law is well settled that the value must be assessed as of the date of taking, and DIBC's appraisal assesses value as of January 23, 1980, the date the Government took possession of the property, rather than October 1, 1979, when this action was commenced. The Court finds no basis for concluding at this time that the appraisal is based on any difference of value that occurred in the three months in question. At trial, the jury will be instructed to assess the value as of the date of taking and will be able to decide itself if indeed there is any difference. This claim forms no basis for granting of the motion *in limine.*

Finally, the Government objects to DIBC's estimates as to the "highest and best use" to which the taken property can be put. It claims that the DIBC's appraisal is speculative because it is based upon an income capitalization method. It also asserts that there are other impermissibly speculative elements in the appraisal. It objects because the appraisal "assumes a comfortable profit flow," that the KNI proposal requires a post-condemnation assembly of the Sogoian property, (parcel A3), and that, since DIBC did not acquire the Sogoian property, the inclusion of parcel A3 is "pure speculation." It further objects that the KNI proposal requires a post-condemnation closing of 21st Street, which could not be accomplished.

These arguments raise issues of fact to be determined at trial. DIBC asserts by affidavit that it did not need the Sogoian property, or the closing of 21st Street at the time of the taking in order to implement the KNI proposal. It asserts that the ownership of parcels A1 and A2 were all that was needed to implement the KNI proposal, and it claims it was not necessary to close 21st Street.

■ In examining the Government's other objections concerning the "highest and best use" of the land, it must be remembered that one of the basic principles of eminent domain law is that the condemnee

is entitled to not just the value of his property as used at the time of the taking, but rather the value his property would command on the open market in light of the highest and most profitable use to which it might reasonably be devoted in the near future. In *Olson v. United States,* 292 U.S. 246 at 255–57, 54 S.Ct. 704, 708–09, 78 L.Ed. 1236 (1945), the Court stated:

Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined. The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held. . . .

.    .    .    .    .

. . . [Market value is] the amount that in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy. In making that estimate there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining. . . . The determination is to be made in the light of all facts affecting the market value. . .

The Government does not contend that DIBC should not be able to present evidence of its "highest and best use" for the land, but claims that the DIBC appraisal is speculative. It will be the responsibility of the Court at trial to screen the potential uses and exclude from jury consideration those uses which have not been demonstrated to be practicable and reasonable under the *Olson* test. *Olson* holds that in examining a proposed use a two-part test is applied: 1) a showing of reasonable probability that the land is both physically adaptable for such use, and 2) evidence that there

is a need for demand for such use in the reasonably near future. At trial, the Court will determine whether the land owner has produced credible evidence that a potential use is reasonably practicable and reasonably probable in the near future. If such credible evidence is produced, the jury will then decide whether the property's suitability for this use enhances its market value and, if so, by how much. The Court will not hold a separate evidentiary hearing on this matter. The screening will be done during trial out of the presence of the jury. *See United States v. 478.34 Acres of Land, Tract No. 400,* 578 F.2d 156 (6th Cir. 1978).

The Government, in a supplemental brief, seems to suggest that under *United States v. Reynolds,* 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970), the trial judge is to decide the issue of "highest and best use" and that this is not to be submitted to the jury. This Court is convinced, however, that *Reynolds* must be interpreted narrowly here. The specific holding of *Reynolds* was that the "scope of the project" issue in eminent domain cases is to be decided by the trial judge under FRCP 71A(h). *Reynolds* also has dicta, upon which the Government seems to rely, that under 71A(h) "it is for (the judge) to decide 'all issues' other than the precise issue of the amount of compensation to be awarded." 397 U.S. at 20, 90 S.Ct. at 807.

The better view is that *Reynolds* merely holds that 71A(h) commands a trial judge to decide "preliminary matters," *Id.* at 18, 90 S.Ct. at 806, and that this holding should not be extended to include the "highest and best use" issue, which is far from a "preliminary matter." The cases which have discussed this issue have uniformly so held. *See United States v. 341.45 Acres of Land, More or Less, Located in the County of St. Louis, State of Minnesota,* 633 F.2d 108, 111 (8th Cir. 1980); *Monroe, supra,* at 815. They have allowed the jury to determine the issue of "highest and best use" if there is evidence sufficient to support a finding of reasonableness. *See also United States v. 1,291.83 Acres of Land, More or Less, Situated in Adair and Taylor Counties,*

*Commonwealth of Kentucky,* 411 F.2d 1081, 1087 (6th Cir. 1969) (prior to *Reynolds.*)

The rationale for allowing a jury to decide the issue of "highest and best use" is simple. In an eminent domain case, this is the crucial element in determining just compensation, which Rule 71A(h) explicitly commits to the jury. For the Court to decide such an issue would take away from the fact finder one of its principal responsibilities and leave the jury with virtually nothing to decide. It would make the right to jury trial a hollow right. The issue of highest and best use is far from a preliminary matter. It is a key issue in determining just compensation. The jury must be the eventual trier of the issue of just compensation, and the function of the trial judge is to make a preliminary factual finding that there is an adequate basis to put the issue to the jury for determination.

None of this means, of course, that the Court accepts DIBC's proposal as non-speculative, or that the Government is not entitled to demonstrate at trial that it is speculative. With reference to the Sogoian property (parcel A3) or the closing of 21st Street, DIBC will have to meet threshold requirements of reasonableness to get these valuations to the jury. As far as the contention that the capitalization of income method of appraisal is speculative, this Court also will reserve judgment subject to a threshold showing by DIBC.

■ In reserving judgment on the appraisal methods used in DIBC's valuation, the Court is mindful that working rules in eminent domain cases are not to be applied rigidly. The key requirement remains just compensation. Although there may be problems in the capitalization method, the Court is mindful of the fact that this case may present particular problems of valuation since it appears that the most commonly used and traditional method of evaluation in eminent domain cases, that of comparable sales, is not readily available here. DIBC should not be penalized simply because of evaluation of its fairly-unique taken property presents individualized problems as long as it can produce a method of

valuation that is non-speculative. DIBC has a right to have the jury decide its evidence of "highest and best use" and to present any probative non-speculative evidence that can persuade the jury of its position. The Government has every right to attempt to convince the jury otherwise.

For the reasons given, the Government's motion for an *in limine* ruling of inadmissibility of the appraisal is denied.