**UNITED STATES of America, Plaintiff,**

v.

**Jeremy A. MACK, Defendant.**

**No. 1:13CR278.**

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 5, 2014.

Bridget M. Brennan, Carol M. Skutnik, Office of the U.S. Attorney, Cleveland, OH, for Plaintiff.

Lawrence J. Whitney, Nathan A. Ray, Burdon & Merlitti, Akron, OH, for Defendant.

## OPINION AND ORDER

SARA LIOI, District Judge.

Before the Court is the in limine motion of the government to preclude defendant Jeremy Mack from presenting evidence of prior involvement in commercial sex acts that did not involve force, threats of force, fraud, or coercion (Doc. No. 121). Defendant has filed a response (Doc. No. 123). The Court conducted a hearing on this and other pre-trial motions on January 30, 2014, and, after entertaining oral argument, announced its ruling on this motion on the record. This Opinion and Order shall memorialize that ruling.

### I. BACKGROUND

The facts of this particular action have been set forth previously in numerous opinions and orders by this Court. Familiarity with those facts is therefore presumed, and only a brief review of the most salient facts is necessary to frame the government's present in limine motion.

Defendant was one of two individuals indicted by the federal government in connection with an alleged sex and drug trafficking conspiracy. The superseding indictment alleges that, between December 2012 and April 9, 2013, defendant and codefendant Ashley Onysko conspired to coerce women into engaging in commercial sex acts. (Doc. No. 19.) The charging instrument identifies four women, set forth as "Victims # 1–# 4," who were allegedly coerced into exchanging commercial sex acts for compensation. According to the superseding indictment, Victim # 2 was a minor at the time of the charged offenses.

The specific charges against defendant include the following: conspiracy to commit fraud, in violation of 18 U.S.C. § 371; sex trafficking of children, and sex trafficking of women by force, fraud, or coercion, in violation of 18 U.S.C. § 1591; distribution of controlled substances, in violation of 21 U.S.C. § 841; and tampering with a witness and obstructing justice, in violation of 18 U.S.C. § 1512. Co-defendant Onysko has entered into a plea agreement, and is expected to testify at Mack's trial as a cooperating government witness.

It is the government's belief that Mack used a variety of means to collect the debts from his drug customers, with certain female clientele being instructed by Mack to engage in commercial sex acts to earn money to satisfy their debts. According to the government, not all of the women selected as prostitutes were subjected to force, fraud, and coercion by Mack. In fact, the government concedes that some of Mack's alleged prostitutes may have willingly engaged in commercial sex acts at Mack's behest. The government maintains that Mack carefully selected Victims # 1–# 4 to be subjected to more coercive means to compel their cooperation because he believed that these women would be especially receptive to such tactics.

The force, fraud, and coercion alleged to facilitate the sex trafficking involving Victims # 1–# 4 included physical violence, threats of violence, and intentional drug addiction. It is the government's theory that Mack supplied Victims # 1–# 4 with heroin and cocaine—without requiring payment at the time of distribution—to ensure that the victims would need to engage in commercial sex acts to pay off the drug debts they owed to Mack, and that he controlled their access to drugs to force them to continue to prostitute themselves in order to avoid painful withdrawal symptoms. One or more of the alleged victims will likely testify to this coercion during the government's case-in-chief.

### II. LEGAL STANDARDS

#### A. Motion in Limine Standard

Although not explicitly authorized by the Federal Rules of Evidence or the Federal Rules of Criminal Procedure, the practice of ruling on motions in limine "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4, 105

S.Ct. 460, 83 L.Ed.2d 443 (1984). Motions in limine allow the court to rule on evidentiary issues prior to trial in order to avoid delay and to allow the parties to focus remaining preparation time on issues that will in fact be considered by the jury. *See United States v. Brawner,* 173 F.3d 966, 970 (6th Cir.1999); *Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir.1997).

 Courts should exclude evidence on a motion in limine only when it is clearly inadmissible. *Indiana Ins. Co. v. General Elec. Co.,* 326 F.Supp.2d 844, 846 (N.D.Ohio 2004). If the court is unable to determine whether certain evidence is clearly inadmissible, it should defer ruling until trial so that questions of foundation, relevancy, and potential prejudice can be evaluated in proper context. *Id.* Ultimately, the determination whether to grant or deny a motion in limine is within the sound discretion of the trial court. *Goldman v. Healthcare Mgmt. Sys., Inc.,* 559 F.Supp.2d 853, 858 (W.D.Mich.2008) (citing *United States v. Certain Land Situated in the City of Detroit,* 547 F.Supp. 680, 681 (E.D.Mich.1982)). In limine rulings are preliminary, and the district court may change its ruling at trial for any reason it deems appropriate. *United States v. Yannott,* 42 F.3d 999, 1007 (6th Cir.1994).

### B. Federal Rules of Evidence

All relevant evidence is admissible and evidence that is not relevant is not admissible. FED.R.EVID. 402. "Evidence is relevant if (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED.R.EVID. 401. The relevancy standard is liberal. *Daubert v. Merrell Dow Pharm.,* 509 U.S. 579, 587, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Relevant evidence, however, may be excluded if its "probative value is substantially outweighed by the danger of one of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED.R.EVID. 403.

### III. THE GOVERNMENT'S IN LIMINE MOTION

By its motion, the government seeks to prevent Mack from offering testimony from witnesses, other than alleged Victims # 1–# 4, who will claim that they engaged in commercial sex acts for defendant Mack's benefit voluntarily. Specifically, the government argues that defendant should be precluded, under Fed.R.Evid. 404(b) and 405, from offering instances of prostitution by women not identified in the superseding indictment that do not violate federal law to counter the government's allegations of force, coercion, or fraud, as required for a conviction under 18 U.S.C. § 1591.

Defendant takes issue with the government's position, and argues that he should be permitted to offer "reverse extraneous offenses or other good act evidence" to defend against the government's charges that force and/or coercion was used to compel Victims # 1–# 4 to commit commercial sex acts. (Doc. No. 123 at 1432.) By his proffer, defendant represents that he would call as witnesses other women who had allegedly prostituted themselves at defendant's request, but did so voluntarily and without force or coercion by Mack. He also plans to call witnesses who will testify that none of the girls in Mack's "employ" as prostitutes—including Victims # 1–# 4—were coerced, and were freely given credit on their drug debts. He insists that the exclusion of such testimony will violate his constitutional right to present a defense.

 "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina,* 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (quoting *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)). Being allowed to present "relevant evidence is integral to that right." *Baze v. Parker,* 371 F.3d 310, 323 (6th Cir.2004) (citing *Taylor v. Illinois,* 484 U.S. 400, 408–09, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988)). A criminal defendant does not, however, "have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under the

standard rules of evidence." *Taylor*, 484 U.S. at 410, 108 S.Ct. 646.

Evidence of noncriminal activities offered by a defendant to disprove an aspect of the government's case is a subset of "other acts" evidence known as "reverse 404(b)" evidence.[1] The Sixth Circuit has held that the admission of "reverse 404(b)" evidence is subject to the same standard Rule 404(b) analysis applicable to "other acts" evidence most often offered by the government. *See United States v. Clark*, 377 Fed.Appx. 451, 458 (6th Cir.2010); *United States v. Lucas*, 357 F.3d 599, 605 (6th Cir.2004).

■ Evidence that an individual acted lawfully on other occasions not charged in the indictment is generally inadmissible in that it does not negate the charge that he acted with criminal intent on another occasion. *See United States v. Dobbs*, 506 F.2d 445, 447 (5th Cir.1975) ("evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant"); *see, e.g., United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir.2008) (In fraud trial involving bogus entertainment event, evidence that defendant had produced a prior legitimate event was not relevant to "negate criminal intent"); *see generally, United States v. Daulton*, 266 Fed. Appx. 381, 386 (6th Cir.2008) ("Rule 404(b) prohibits the use of extrinsic evidence of other crimes, wrongs, or acts in order to show that a person acted in conformity therewith."). It may be probative, however, where a defendant is alleged to have "always" or "continuously" committed the acts alleged. *United States v. Damti*, 109 Fed. Appx. 454, 455–56 (2d Cir.2004); *see also Daulton*, 266 Fed.Appx. at 386 ("Evidence of noncriminal activities 'would only be relevant if the indictment charged the defendants with ceaseless criminal conduct.'") (quoting *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir.1990)); *Dobbs*, 506 F.2d at 447 (finding reverse 404(b) evidence not relevant where the defendant was not charged with a scheme).

Defendant argues that the government has charged this case as a conspiracy, and has essentially maintained that Mack and his co-defendant always or ceaselessly operated a sex trafficking conspiracy using force and coercion. In support, Mack points to the affidavit of FBI Special Agent Kelly Laberti, offered in support of the original complaint. (Doc. No. 1–1.) There, S.A. Laberti avers, in part, that when Victim # 1 (identified in the affidavit as Jane Doe # 1) came to live at the Mack house several girls were living at the house and working for Mack as prostitutes. "Jane Doe # 1 said the girls were all attempting to pay-off a drug debt to MACK." (*Id.* at 28.) Jane Doe # 1 further stated that "MACK liked to put girls in debt to him for drugs . . . started by giving girls drugs for free. He then had sex with them for drugs . . . When the girls could not pay . . . he fronted them the drugs and stated 'they'll be working for me within a week.'" (*Id.* at 29.)

There are several problems with Mack's position. First and foremost, the special agent's affidavit is not evidence in this case, and any alleged reference to ceaseless activity involving forced or coerced prostitution activities at Mack's residence is vague at best. In fact, the vast majority of the references of the use of force or coercion in the agent's affidavit are limited to Victims # 1– # 4. (*Id.* at 25 [Victim # 1 stated that "she was being held by MACK and forced to prostitute herself to pay off a drug debt."]; *Id.* at 28 ["Jane Doe # 1 was addicted to heroin and was forced to rely on MACK for her daily heroin to avoid going through painful withdrawl."]; *Id.* at 28 ["Jane Doe # 1 stated that if she kept any money, she believed MACK would 'beat the living crap out of me.'"]; *Id.* at 29 ["Jane Doe # 1 was afraid of MACK and described him as violent."]; *Id.* ["MACK hit Jane Doe # 1 in the face on one occasion when a family member came to Elyria looking for her . . . Jane Doe # 1 described MACK as having a terrible temper and he frequently made statements such as: 'don't get me wrong, I'm not afraid to kill a bitch,' and that he 'would chop up

---

1. Technically, the "reverse 404(b)" evidence defendant Mack seeks to offer at trial is not of lawful conduct because it still involves the illegal promotion of prostitution. However, by offering

this evidence, defendant Mack hopes to negate the element of force or coercion that makes this conduct a federal offense under 18 U.S.C. § 1591.

and dispose of a bitch.'"]; *Id.* at 30 ["Jane Doe # 1 said she was afraid to attempt to leave the Tattersal house because MACK knew where she lived and where her family lived. She was afraid MACK would hurt her or her family if she tried to leave."].) [2]

Second, the superseding indictment does not charge defendant with continuously or unceasingly using force or coercion to compel commercial prostitution. Rather, *all* of the specific references to the use of force or fraud are limited to Victims # 1–# 4. (Doc. No. 19, Superseding Indictment, at 95 ["It was further part of the conspiracy that, after Victims # 1, # 2, # 3 and # 4 incurred drug debts, JEREMY A. MACK told and caused others to tell Victims # 1, # 2, # 3, and # 4 that they must engage in commercial sex acts and then provide all of their earnings to JEREMY A. MACK and ASHLEY M. ON-YSKO to repay their drug debts ... It was further part of the conspiracy that JEREMY A. MACK and ASHLEY M. ONYSKO used and caused to be used force, threats of force, fraud and coercion to compel Victims # 1, # 2, # 3 and # 4 to engage in commercial sex acts."]; *Id.* at 100 [Mack and Onysko acted "in reckless disregard of the fact that means of force, threats of force, fraud and coercion would be used to cause Victim # 1 to engage in a commercial sex act"]; *Id.* [Mack and Onysko acted "knowing and in reckless disregard of the fact that means of force, threats of force, fraud and coercion would be used to cause Victim # 2 to engage in a commercial sex act"]; *Id.* at 100 [Mack and Onysko acted "knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion would be used to cause Victim # 3 to engage in a commercial sex act"]; *Id.* at 101 [Mack and Onysko acted "knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion would be used to cause

Victim # 4 to engage in a commercial sex act[.]"].)

At the motion hearing, the government emphasized that Mack has not been charged with engaging in a ceaseless pattern of compelling commercial sex through means of fraud and coercion, nor has he been charged with *always* using such means to compel commercial sex acts. Further, the government represented that it does not intend to offer evidence that every action taken by Mack involved an element of force or coercion. In fact, it is the government's position that Mack intentionally singled out certain girls, including Victims # 1–# 4, for such treatment.

Several "reverse 404(b)" cases are instructive as to the question of when specific instances of lawfulness may serve to negate criminal intent. In *Daulton*, the defendant was charged with aiding and assisting with the preparation of false federal income tax returns for certain tax years, in violation of 26 U.S.C. § 7206(2). At trial, the defendant sought to introduce evidence of non-fraudulent tax returns he had prepared in other years. The district court refused to permit the evidence, finding it irrelevant and immaterial to whether the defendant fraudulently prepared the returns identified in the indictment. In affirming his conviction, the Sixth Circuit panel rejected the defendant's argument that the other returns should have been admitted to rebut the government's theory that he had engaged in a conspiracy to falsify tax returns, noting that the government did not contend that the defendant had "always" engaged in criminal activity when preparing tax returns. *Id.* at 386. The court found that the "other acts" evidence would have been legally inadequate in that, at best, it would have "proved only that [the defendant] did not *always* include false deductions on his clients' tax returns." *Id.*[3]

---

**2.** To be sure, portions of the affidavit suggest that Mack applied force against other girls. (*See* Doc. No. 1–1 at 30 ["Jane Doe # 2 (Victim # 2) noticed that the other girls were afraid of MACK and did not seem allowed to leave the house except to meet clients. Jane Due # 2 learned from one of the girls that MACK had hit a couple of girls ... Jane Doe # 2 said MACK was mean, had a terrible temper and screamed at all the girls."].) With the possible exception of a portion

of this last allegation, none of the allegations provided that Mack always or ceasingly exerted force or coercion over all of the girls.

**3.** Likewise, in *Ellisor*, the Eleventh Circuit ruled that evidence that a defendant had produced other legitimate entertainment events in the past was inadmissible "reverse 404(b)" evidence because it did not "bear on his intent to defraud with respect to the Christmas show [identified in

Similarly, in *Damti*, a case involving conspiracy to commit fraud in financial transactions, the court found no error in the exclusion of proposed evidence that, on other occasions not charged in the indictment, the defendants had made financial investments without defrauding or extorting money from their clients. In reaching this conclusion, the court noted that the government "did not allege to the jury that the defendants engaged in 'ceaseless' criminal conduct, that 'all' of the defendants' customers were defrauded, or that the defendants' business was 'permeated with fraud.'" 109 Fed. Appx. at 456. Instead, the government restricted its case to ten specific instances, which it argued were representative of the substantial number of the financial "moves" performed by the defendants during the period of the conspiracy.[4] The court explained, "[e]ven if many or most of these moves were fraudulent, it follows that a substantial portion also presumably were legitimate. Evidence of 'good moves,' therefore, would not have been probative of the key issue during trial." *Id.*

■ Here, the government represents that it does not intent to offer evidence or argument supporting a theory that Mack "always" employed force or coercion, or that such tactics were routinely employed as part of his prostitution enterprise. While the government has charged this matter as a conspiracy, the government maintains that it will confine itself to proving that Mack used force or coercion against Victims # 1–# 4. Under

such circumstances, evidence that Mack did not on other occasions use force or coercion to compel other women to perform commercial sex acts would not negate allegations that he violated federal law on those occasions and with the identified alleged victims specifically set forth in the superseding indictment.

Further, even if this evidence was admissible under Rule 404(b), it would still be subject to analysis under Rule 403. *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008). Rules 403 requires the court to "determine whether the 'other acts' evidence is more prejudicial than probative." *United States v. Lattner*, 385 F.3d 947, 955 (6th Cir.2004). Any probative value of this evidence is substantially outweighed by the likelihood of jury confusion. The "reverse 404(b)" evidence involving whether *other* women were forced to engage in commercial sex would be entirely confusing to the jury, and would distract them from their determination of the charged conduct involving Victims # 1–# 4.[5] As such, the Court finds that, even if this evidence was admissible under Rule 404(b) and 405, it would still be excluded under Rule 403.

That said, the Court notes that defendant will be permitted to offer testimony from other individuals who may testify to whether they observed Mack or his co-defendant employ force or coercion on Victims # 1–# 4, whether they knew if these women could come and go freely from Mack's residence,

the indictment], and is therefore irrelevant." *Ellisor*, 522 F.3d at 1270.

4. According to the government, the conspiracy involved "more than four-thousand moves." *Damti*, 109 Fed.Appx. at 456.

5. With respect to coercion and force under 18 U.S.C. § 1591, the jury must consider whether the reasonable person of the same background and in the same circumstances would perform or continue performing commercial sexual activity in order to avoid incurring the threatened harm. In making this determination, the jury will be instructed to consider the "[victim's] particular station in life, physical and mental condition, age, education, training, experience and intelligence." 2–47A Modern Federal Jury Instructions—Criminal P 47A.03; *see* 18 U.S.C. § 1591(e)(4); *see also United States v. Djoumessi*, 538 F.3d 547, 552–53 (6th Cir.2008) (recognizing

that evidence of a victim's known vulnerabilities, including age, are relevant to a "serious harm" determination under 18 U.S.C. § 1584); *United States v. Alzanki*, 54 F.3d 994, 1002 (1st Cir. 1995) (under 18 U.S.C. § 1584, affirming jury instruction directing consideration of whether the victim "reasonably believed that she had no choice except to remain in the service of the [defendants]" and holding that "[i]t was entirely proper to instruct the jury to consider [the victim's] background and experience in assessing whether her fears were reasonable".) Differences in the situations of the "other women" would make this determination as to Victims # 1–# 4 difficult, especially where it is the government's theory that defendant subjected Victims # 1–# 4 to such treatment because of their specific circumstances and vulnerabilities.

and whether Victims #1–#4 were freely given credit for their drug debts.

Moreover, the Court stresses that the government has ventured down a very narrow path. While the superseding indictment does identify discrete acts against particular individuals, it also charges that this conduct formed a conspiracy (albeit a narrowly defined conspiracy). Should the government stray from its chosen path and offer evidence or argument that supports a theory that Mack always or ceaselessly used force or coercion to compel commercial sex against any and all women in his "employ," the Court would not hesitate to revisit its ruling. At least for now, Mack may not present evidence of specific instances of voluntary commercial sex activity involving women other than those specifically identified in the superseding indictment (Victims #1–#4.). Should counsel for Mack believe that the government has crossed over the line with its evidence or argument, they should seek to approach the bench so that the Court can rule on the issue at side bar.

For all of the foregoing reasons, the government's in limine motion is granted, in part.