JACOBS, Circuit Judge,
dissenting:
I respectfully dissent.
Defendants Antonio Rivera, Jason Villa-man, and John Whaley (along with Rivera’s sister, Jasmin, who cooperated and testified for the government) recruited young, poor, undocumented women to work in two bars owned by Rivera, where they had sex with customers who got them dangerously inebriated. Defendants transported these women to and from the bars, abused, and sexually assaulted them. The government argued that defendants ensnared the victims of their sex-trafficking, alien-harboring, and alien-transporting scheme by deceiving them about the nature of their employment, withholding their pay, threatening them with deportation, telling them that the police worked for Rivera and would not assist them, and, generally, creating a climate of fear. Defendants were convicted of (variously) multiple counts of committing conspiracies to commit sex-trafficking by means of force, fraud or coercion; forced labor conspiracy; and transporting and harboring aliens; and substantive counts of these offenses.
Such conduct would violate a host of state laws; but the federal offense of sex-trafficking requires the government to show that the acts were accomplished by *190 certain means, and the means relied on at trial were fraud and threats. The prosecution’s case was that the women were recruited on the false pretense that they would work as respectable waitresses— well paid, and well taken care of; and that they instead were mistreated, exploited, and made to feel that they were not free to leave Rivera’s employ. There was enough evidence to convict defendants of these despicable offenses in a fair trial, and I would vote to affirm if they had gotten one.
The district court granted the government’s in limine motion to “preclude evidence of the victims’ other sexual behavior both pre- and post-employment at the bars, and any other employment in a sexualized business, outside of the occasions pertaining to this case where the defendants forced the victims to engage in prostitution and other forced sexual contact.” D. Ct. Dkt. No. 231 at 2. The government argued, and the majority agrees, that this evidence was “inadmissible under Fed. R.Evid. 412, which protects victims of sex crimes, and is irrelevant under Fed. R.Evid. 401, 402 and 403.” Id.
There were two trial errors; neither of them was harmless, and each reinforced the tendency of the other to prevent a fair trial on the critical issue of whether the women were defrauded and coerced.
First, the court excluded evidence that the victims worked as prostitutes prior to their employment by defendants as well as evidence of prior employment in a sexualized business. Evidence of work in a sexualized business was excluded on no ground I can think of: there are many jobs in a sexualized environment — such as bartending, pole-dancing, bouncing, etc. — that are categorically not sexual behavior. Exclusion of prior work in prostitution does implicate Rule 412;' but the outer boundary of Rule 412 stops short of violating the Confrontation and Due Process Clauses. Because the central issues at defendants’ trial were fraud and coercion, the blanket exclusion of relevant evidence under Rule 412 deprived defendants of their constitutional rights to confront witnesses and to a fair trial. See infra Points I and II.
Second, the court’s sex-trafficking charge allowed the jury to decide guilt solely on the basis of the subjective feelings of the women, whereas a proper instruction would have required consideration as well of whether a reasonable person in their position would have felt coerced or been misled and defrauded. See infra Point III.
The instructional error compounds the evidentiary error, and the two leave me with real questions about the fairness of this trial. See United States v. Haynes, 729 F.3d 178, 197 (2d Cir.2013) (vacating judgment of conviction and remanding because multiple errors, considered together, “call into serious doubt whether the defendant received the due process guarantee of fundamental fairness to which she and all criminal defendants are entitled”). See infra Point IV.
Because the Confrontation Clause violation and the instructional error rendered defendants’ trial fundamentally unfair, a new trial as to all counts is warranted. See Spencer v. Texas, 385 U.S. 554, 563-64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) (“[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial.”); cf. United States v. Bruno, 383 F.3d 65, 91 (2d Cir.2004) (recognizing spillover effect that warranted vacatur of counts other than those primarily infected with error). See infra Point V.
I
The Constitution guarantees “a meaningful opportunity to present a complete *191 defense” at trial. Holmes v. South Carolina, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006). “Whether the exclusion of [evidence] violate[s] [a defendant’s] right to present a defense depends upon whether ‘the omitted evidence^] evaluated in the context of the entire record[,] creates a reasonable doubt that did not otherwise exist.’ ” Justice v. Hoke, 90 F.3d 43, 47 (2d Cir.1996) (quoting United States v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).
Federal Rule of Evidence 412 bars the introduction of evidence of a victim’s “sexual behavior” and “sexual predisposition.” Fed.R.Evid. 412(a)(1), (2). In a criminal case, however, the rule yields if the exclusion of evidence would violate the defendant’s constitutional rights. Id. at (b)(1)(C). Rule 412 is intended to “safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process.” Fed.R.Evid. 412 advisory committee note to 1994 amendment. In that way, the rule “eneourage[s] victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders.” Id.
“Restrictions on a criminal defendant’s rights to confront adverse witnesses and to present evidence may not be arbitrary or disproportionate to the purposes they are designed to serve.” Michigan v. Lucas, 500 U.S. 145, 151, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (internal quotation marks omitted). To that end, the Supreme Court limited a state rape-shield law when it impinged upon a defendant’s Confrontation Clause right. Olden v. Kentucky, 488 U.S. 227, 231-32, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (finding constitutional violation in a case where the central issue was consent and the court excluded evidence “from which jurors ... could appropriately draw inferences relating to the reliability of the witnesses” and from which “a reasonable jury might have received a significantly different impression of the witness’ credibility” (internal alterations and quotation marks omitted)).
In this commercial sex-trafficking case, Rule 412 furnishes no basis for precluding evidence of exposure to a sexualized business; as defendants put it, “[fjraud in the inducement was a running theme” of the prosecution. Defs.’ Ltr., dated Feb. 3, 2015, at 3. Moreover, precluding cross-examination of the victims about work as prostitutes prior to their employ by defendants prevented defendants from advancing their main defense: that the victims were not defrauded into engaging in a commercial sex act, an element of the offense under 18 U.S.C. § 1591(a). Cf. Alvarez v. Ercole, 763 F.3d 223, 232 (2d Cir. 2014) (affirming grant of habeas relief when trial court’s rulings “precluded [the defendant] from fleshing out his main defense theory”).
Rule 412 does not bar the introduction of evidence in “circumstances in which the probative value ... significantly outweighs possible harm to the victim.” Fed.R.Evid. 412 advisory committee notes to 1994 amendment. Here, in light of the charges and the government’s theory of its case, the excluded evidence was highly probative: if credited, it would have been a full defense to the sex-trafficking theories advanced by the prosecution. Cf. United States v. Elbert, 561 F.3d 771, 777 (8th Cir.2009) (rejecting defendant’s Rule 412 argument in a commercial sex-trafficking case “[b]ecause the victims were minors and could not legally consent” and therefore “the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims”).
*192 II
At the pre-trial conference in which the court heard the in limine motion, the judge asked the government a telling question: “[do] you think that if someone went from one situation into an identical situation, that might be relevant”? VA 155. The government argued that it was not: “Our theory is that work in a sexualized business is not relevant to this trial unless it’s ... working in the bars Antonio Rivera owned____ It is just as likely that the victim ... was abused by another bar owner.” Id. The court initially recognized that this ease was distinguishable from one involving a “personal one-on-one [ie., intimate] relationship,” id: at 156, and indicated that it would “take [the evidence] as it comes”! but the court later granted the government’s in limine motion by a simple endorsement of the government’s motion. Id. at 152.
On appeal, the government maintains (and the majority accepts) that the excluded evidence is irrelevant to whether the victims were.coerced into working as prostitutes by Rivera, Villaman and Whaley. Maj. Op. at 185. If the evidence were truly irrelevant, the protections of Rule 412 would not even be implicated; the evidence would simply be inadmissible under Federal Rule of Evidence 401. And it is of course “intolerable to suggest that because [a] victim [was] a prostitute, she automatically is assumed to have consented with anyone at any time.” United States v. Saunders, 943 F.2d 388, 392 (4th Cir.1991). But defendants did not seek to cross-examine the victims about their prior employments in order to suggest consent to specific sexual encounters. Rather, the excluded evidence was relevant to whether their employment in the commercial sex’ trade was procured by fraud or coercion, as the government was required to show under 18 U.S.C. § 1591. A reasonable juror could conclude that prior, voluntary work in the industry suggested that the employment arrangement here was consensual and not entered into by fraud.
Relevance, however, is not the decisive issue here. In order to warrant relief, the exclusion of the evidence must have “violated] the defendants’] constitutional rights.” Fed.R.Evid. 412(b)(1)(C). I conclude that it did. See Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (“Confrontation means more than being allowed to confront the witness physically.”).
It is hard to see how defendants could have put on a “complete defense,” Holmes v. S. Carolina, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006), without evidence of the victims’ prior employment in a sexualized business. That is because (under the government’s theory and the court’s charge) the jury was invited and directed to decide the critical issues of fraud and coercion from the wholly subjective point of view of the victims, and in light of their backgrounds and special vulnerabilities.[1] Cf. United States v. Alvarez, 601 Fed.Appx. 16, 19 (2d Cir.2015) (summary order) (“Here, the district court admitted evidence of the victims’ history of *193 prostitution prior to their meeting Alvarez. In that way, Alvarez was able to present a complete defense and to impeach the government’s witnesses using the admitted evidence of the victims’ earlier prostitution. The excluded evidence of the victims’ later prostitution was not critical to protect Alvarez’s constitutional rights.”).
Everything turned on the government’s ability to convince the jury that the victims were deceived, and “a reasonable jury might have received a significantly different impression of the witness’ credibility” if defendants had been permitted to establish that the victims previously worked in sexualized environments. Olden, 488 U.S. at 231-32, 109 S.Ct. 480 (internal alterations and quotation marks omitted); cf. United States v. Shellef 507 F.3d 82, 107 (2d Cir.2007) (“Where a jury is presented with multiple theories of conviction, one of which was invalid, the jury’s verdict must be overturned if it is impossible to tell which theory formed the basis for conviction.” (internal quotation marks omitted)). As defendants argued here and before the district court, see VA 147, evidence of prior work in a sexualized environment goes to the heart of their defense. See United States v. Forrester, 60 F.3d 52, 64-65 (2d Cir.1995) (“Error going to the heart of a critical issue is less likely to be harmless.” (internal quotation marks omitted)).
Here, the government emphasized to the jury that the victims expected to work as respectable, well looked after waitresses. See VA 755 (arguing in summation that defendants “all agreed to tell the girls that they would just be waitresses to entice them”); id. at 756 (“[Defendants] ... decided to lie to the girls about what the job was, because if they knew the truth of the sex act they would never agree in the first place. They lied about the work, they lied about the money. They lied about the girls’ safety. And that is fraud.”); see also Defs.’ Ltr. at 3. In other words, the government’s theory was that the victims accepted employment with defendants and then “engage[d] in [the] commercial sex act[s]” that formed the basis for defendants’ prosecution only because of defendants “fraud.” 18 U.S.C. § 1591(a). But the precluded line of inquiry — the victims’ prior places of employment and exposure to sexualized environments (as well as pri- or work as prostitutes) — bears directly on whether they were defrauded within the meaning of 18 U.S.C. § 1591(a); that is, whether they understood the terms and circumstances of their employment. Cf. United States v. Valenzuela, 2008 WL 2824958, at *3 (C.D.Cal. July 21, 2008) (recognizing that if the government introduced evidence “tending to show that the victims ... did not expect to engage in prostitution ... it will have put those victims’ sexual histories at issue” and, “[u]nder those circumstances, it is possible that ... evidence rebutting the government’s allegations might be admissible under the constitutional exception”).
The government argues that notwithstanding the grant of its in limine motion, the defense “had ample evidence in the record to argue, as it did, that the testifying waitresses consented to engaging in prostitution.” Gov’t Br. at 107. In rejecting defendants’ Confrontation Clause argument, the majority rehearses some of this evidence. See Maj. Op. at 184. True, defense counsel endeavored to show the jury that the waitresses’ employment was consensual and that they were not deceived, but “[w]e cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it.” Davis, 415 U.S. at 317, 94 S.Ct. 1105.
Ill
As the majority • concludes, the district court erred by delivering a wholly subjec *194 tive sex-trafficking charge instead of a charge that reflected the proper hybrid standard. See Maj. Op. at 186-87. I part company with the majority because I am not at all persuaded that omission of the objective aspect of the statutory consideration was harmless beyond a reasonable doubt.
The jury charge greatly lightened the government’s burden. It is one thing (and hard) to convince a jury that a reasonable person, with the same background as the victim and in the same circumstances as the victim, would have felt coerced or defrauded. Cf. United States v. Campbell, 764 F.3d 880, 888 (8th Cir.2014) (“The jury could find his actions amounted to coercion if the assaults were part of a pattern intended to cause a person to believe that failure to perform an act [of prostitution] would result in serious harm. In doing so, the jury was required to assess how a reasonable person ... in the same circumstances ... would perceive [the defendant’s] conduct.” (internal quotation marks ánd citations omitted and emphasis added)); United States v. Fields, 2013 WL 5278499, at *1 (M.D.Fla. Sept. 18, 2013) (finding harm “sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm” (internal quotation marks omitted and emphasis added)); United States v. Jaensch, 678 F.Supp.2d 421, 432 & n. 6 (E.D.Va.2010) (referencing use of “reasonable person” standard in defining critical elements” of the forced labor statute).[2]
It is of course much easier to establish coercion or fraud subjectively, based on the victims’ own testimony. The jury was instructed by the district court that it could convict if the specific Jane Does testified that they felt coerced regardless of whether a reasonable person in similar circumstances with a similar background would have felt coerced. The question posed was whether the actions of defendants, “even if not sufficient to compel another person to engage in a commercial sex act, were enough to compel that particular Jane Doe.” The jury was further instructed: “If a particular Jane Doe was threatened with or suffered certain consequences in connection with the services she ... rendered that overcame her will and compelled her service, that is sufficient.” RA 522-25 (emphasis added). Pressing its advantage, the government stressed the “specific vulnerabilities” of the victims, and argued that defendants “tailored their coercive scheme to [the] witnesses]’ specific vulnerabilities.” VA 756.
The reduced burden of proving such subjective coercion or fraud becomes lighter than air if the defense cannot elicit evidence that the victims’ employment and experiences let them know in advance what they were getting into.
It therefore matters whether a reasonable person would have found the threats of harm credible. The main threat was that defendants would inform immigration authorities that the victims were present *195 illegally, and arrange to have them deported. A properly instructed jury might find it implausible that the operator of such a business would contact the authorities for any reason: a chop shop does not call the police to report a supplier as a car thief. And a properly instructed jury might have concluded that the threat of deportation to one’s home country would be nothing compared to a form of prostitution tantamount to serial rape. In any event, the objective reasonableness «of the victims’ perception of the consequences of going to the police is a question that should not have been taken from the jury.
We are advisedly reluctant to find harmlessness when we cannot be assured of the impact of the instructional error. See United States v. Kaiser, 609 F.3d 556, 567 (2d Cir.2010) (“[TJhere is a reasonable probability that the jury convicted Kaiser on a conscious avoidance theory and that the jury would not have done so but for the instructional error.”); United States v. Chas. Pfizer & Co., 426 F.2d 32, 40-41 (2d Cir.1970) (“The charge not only did not focus the jury’s attention on [a necessary aspect of the government’s case] but may well have led to a contrary view on their part” and “there can be no assurance that the jury was not misled to defendants’ serious prejudice.”). I cannot conclude with any degree of assurance that the erroneous instruction given here was harmless.
IV
The Rule 412 and instructional errors reinforced and compounded each other. See Chambers v. Mississippi 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (concluding “exclusion of ... critical evidence, coupled with the State’s refusal to permit [the defendant] to cross-examine [a key witness], denied [the defendant] a trial in accord with traditional and fundamental standards of due process”). The government emphasized the specific vulnerabilities of the victims while the court precluded defendants from cross-examining the victims about their specific backgrounds. These errors, considered together, “call into serious doubt whether the defendant received the due process guarantee of fundamental fairness to which ... all criminal defendants are entitled.” Haynes, 729 F.3d at 197.
V
The limitation on defendants’ ability to cross-examine the testifying victims, and the erroneous jury charge on sex-trafficking, had ramifications for the entire trial and cast doubt on the fairness of the verdicts rendered as to all charges. The evidentiary error undermined defendants’ ability to subject the government’s theory of the case to “rigorous testing in the context of an adversary proceeding before the trier of fact.” Lilly v. Virginia, 527 U.S. 116, 123-24, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). The jury instruction given allowed for a conviction if the jury credited the victims’ testimony that they subjectively believed they were coerced and defrauded. A new trial is therefore warranted as to all counts of conviction. See United States v. Al-Moayad, 545 F.3d 139, 178 (2d Cir.2008) (concluding cumulative effect of trial court’s errors denied defendants due process of law and fundamentally fair trial (citing cases)); cf. Chambers, 410 U.S. at 295, 93 S.Ct. 1038 (“[D]enial or significant diminution [of the confrontation right] calls into question the ultimate integrity of the fact-finding process .... ” (internal quotation marks omitted)).
Defendants’ convictions should be vacated, and the case remanded for a new trial free from the evidentiary and instructional *196 errors that undermined the fairness of this trial. I respectfully dissent.

. The majority considers that defense counsels' effort to marshal arguments in closing mitigated the erroneous grant of the motion in limine. See Maj. Op. at 188-89. But the Confrontation Clause is "designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination,” Pennsylvania v. Ritchie, 480 U.S. 39. 52. 107 S.Ct. 989. 94 L.Ed.2d 40 (1987), and here "the reliability of the evidence against [defendants was not] subjected] ... to rigorous testing,” Lilly v. Virginia, 527 U.S. 116, 123-24, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). And of course, as the jury was instructed, the arguments of counsel are not evidence. See United States v. Suarez, 588 F.2d 352, 355 (2d Cir.1978).

. Other courts have invoked this objective aspect of the standard in evaluating challenges to sex-trafficking convictions. See, e.g., United States v. Bell, 761 F.3d 900, 908 (8th Cir. 2014) ("Bell coerced these women into performing commercial sex acts. F(e threatened both their physical and psychological well-being should they leave or implicate him to police. A reasonable person in this situation likely would have found his threats of harm credible....” (emphasis added)); United States v. Mack, 298 F.R.D. 349, 354 n. 5 (N.D.Ohio 2014).