FILED
United States Court of Appeals
Tenth Circuit

May 27, 2026

Christopher M. Wolpert
Clerk of Court

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RYAN ULIBARRI,

    Defendant - Appellant.

No. 25-1281

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:24-CR-00252-NYW-1)**
_____

Submitted on the briefs:[*]

Joshua Sabert Lowther and Bingzi Hu, Lowther | Walker LLC, Atlanta, Georgia, for Defendant – Appellant.

A. Tysen Duva, Assistant Attorney General, Jennifer Hodge, Deputy Assistant Attorney General, S. Robert Lyons, Deputy Chief, Tax Section, Katie Bagley, Joseph B. Syverson, and Todd A. Ellinwood, Attorneys, Tax Section, Criminal Division, Department of Justice, Washington, D.C., for Plaintiff – Appellee.
_____

Before **BACHARACH**, **KELLY**, and **EID**, Circuit Judges.
_____

**KELLY**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.

_____

Defendant-Appellant Ryan Ulibarri was convicted of tax evasion and sentenced to a 41-month term of imprisonment.  He argues on appeal that his sentence is both procedurally unreasonable under the U.S. Sentencing Guidelines, and substantively unreasonable under the 18 U.S.C. § 3553(a) factors.

Our jurisdiction emanates from 28 U.S.C. § 1291 and 18 U.S.C. § 3742.  For the reasons set forth below, we affirm.

## BACKGROUND

Ulibarri, a licensed dentist in Colorado, has owned and operated Ulibarri Family Dentistry since 2014.  Not long after establishing his dental practice, Ulibarri attended a seminar led by associates of Larry Conner.  The seminar purported to teach business owners how to eliminate nearly all federal income taxes on their business income using Conner's alternative tax-mitigation strategy.  The strategy, as it turned out, was an abusive-trust tax scheme.  Ulibarri subsequently became one of Conner's clients and—against the advice of his attorneys and accountants—used Conner's unlawful tax shelter for over seven years.[1]

The tax scheme at issue involved Ulibarri funneling his earnings through a series of "sham trusts" with no legitimate business purpose.  From 2016 through 2023, he assigned a 90% stake in Ulibarri Family Dentistry to a business trust,

_____

[1] Conner also faces criminal charges for his role in promoting, selling, and implementing the fraudulent tax shelter.  *See generally United States v. Conner, et al.*, No. 1:23-cr-00390-RMR, Dkt. No. 93 (D. Colo. Apr. 24, 2024).

creating the illusion that he did not possess or control the dental practice's income. The business trust then distributed its income to a family trust, which, in turn, distributed its income to a charitable trust. Meanwhile, Ulibarri covered his family's spending—e.g., house payments, life insurance, cars, boats, firearms, sports tickets, and spa services—with funds held in the trusts' bank accounts, improperly claiming these personal expenses as tax deductions.

Later, on the trusts' tax returns, each trust in the series reported distributions and deductions matching or exceeding its income, with any remaining income being "donated" to a tax-exempt private family foundation. The foundation then "loaned" its funds back to the sham trusts, ultimately allowing Ulibarri to retain full control and beneficial use of his dental practice's income on a tax-free basis. All told, from 2016 through 2023, Ulibarri's scheme enabled him to avoid paying more than $1.6 million in taxes owed on $5.3 million in earnings from Ulibarri Family Dentistry.

During this seven-year period, Ulibarri went to great lengths to conceal the tax shelter's fraudulent nature from his banks and the IRS. For instance, to disguise the fact that he managed and funded the sham trusts, Ulibarri recruited friends to sign documents falsely as the trusts' nominal grantors. He also furnished bogus trust documents to banks and, on financing applications and tax returns, he provided misleading or deceptive information about his income, assets, and the extent of his control over the trusts. Meanwhile, Ulibarri persisted in implementing his tax scheme even after repeated warnings from lawyers, bookkeepers, and third-party lenders that using the trusts in this way was unlawful.

3

In September 2023, Ulibarri first learned that he was under criminal investigation for the tax scheme when the Department of Justice served him with a target letter.  Despite this notice—and even as late as May 2025, well after he was indicted and convicted—he continued to funnel his income from Ulibarri Family Dentistry through the sham trusts.  IRS records indicate that Ulibarri neither filed a tax return nor paid any federal income tax in 2023.

In August 2024, a federal grand jury returned an indictment charging Ulibarri with six counts of tax evasion under 26 U.S.C. § 7201—one count for each tax year from 2017 through 2022.  Ulibarri pleaded guilty to all counts in February 2025.  At the sentencing hearing, the district court determined that the total loss amount—including the tax loss arising from uncharged conduct in 2023—was $1,616,087, resulting in a base offense level of 22.  *See* USSG §§ 2T1.1(a)(1) & 2T4.1(I).  The district court then applied adjustments for Ulibarri's sophisticated means, acceptance of responsibility, and zero-point offender status, yielding a total offense level of 20.  *See id.* §§ 2T1.1(b)(2); 3E1.1(a); 4C1.1(a).  The advisory guidelines range was therefore 33–41 months of imprisonment.  *See id.* § 5A.

At the hearing's conclusion, the district court sentenced Ulibarri to 41 months of imprisonment, 3 months of supervised release, $1,616,087 in restitution, and a fine of $150,000.  This appeal timely followed.

## DISCUSSION

On appeal, Ulibarri challenges his sentence as both procedurally and substantively unreasonable.  "We review sentences for reasonableness under a

deferential abuse of discretion standard." *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008). This review "includes both a procedural component, encompassing *the method* by which a sentence was calculated, as well as a substantive component, which relates to *the length* of the resulting sentence." *United States v. Smart*, 518 F.3d 800, 803 (10th Cir. 2008) (emphases added). "A sentence is procedurally unreasonable if the district court incorrectly calculates or fails to calculate the Guidelines sentence, treats the Guidelines as mandatory, fails to consider the [statutory sentencing] factors, relies on clearly erroneous facts, or inadequately explains the sentence." *Haley*, 529 F.3d at 1311. A sentence is substantively unreasonable if "the court imposes a sentence that does not fairly reflect the relevant sentencing factors or circumstances of the defendant." *United States v. Maldonado-Passage*, 56 F.4th 830, 842 (10th Cir. 2022).

## I.    Procedural Reasonableness

We first address Ulibarri's argument that the district court abused its discretion in misapplying the sentencing guidelines while computing his offense level. He contends the district court improperly included, and then miscalculated, the 2023 tax loss in its valuation of the total loss amount. He further argues the district court improperly assessed a two-level "sophisticated means" enhancement. "We review the district court's legal interpretation and application of the sentencing guidelines de novo and review the court's factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Henry*, 164 F.3d 1304, 1310 (10th Cir. 1999). "In construing the sentencing

5

guidelines, we are bound not only by the guidelines themselves but also by the commentary to the extent that it is not plainly erroneous or inconsistent with the guidelines." *United States v. Meek*, 998 F.2d 776, 781 (10th Cir. 1993).

## A.   Loss Amount Calculation

For purposes of determining Ulibarri's base offense level, the district court found that the total loss amount was $1,616,087—including $162,053 for the 2023 tax year.[2] On appeal, Ulibarri contends that the 2023 tax loss should not have been included because it arose from conduct unrelated to his 2016–2022 conduct. He further contends that, even if the 2023 tax loss were properly considered as part of the total loss amount, the method used to calculate the 2023 tax loss was defective. He is wrong on both counts.

### 1. Inclusion of 2023 tax loss

During the sentencing hearing, the district court heard evidence from IRS Agent Lizeth Maldonado on the loss amount calculation. Agent Maldonado testified that in 2023, Ulibarri's banking activity, spending activity, and usage of the sham trusts did not vary from the prior seven years in which he used the unlawful tax shelter. She further testified that Ulibarri continued to implement his tax scheme in 2023, and that he neither filed a tax return nor paid any federal income tax that year.

---

[2] The total loss amount also included $18,185 for uncharged conduct in the 2016 tax year. Ulibarri originally objected, but later withdrew his objection, to including the 2016 tax loss in the loss amount calculation. *See* Aplt. App. vol. 1 at 62–63, 100–02; *see also* Aplee. Suppl. App. vol. 1 at 10.

Over Ulibarri's objection, the district court included the 2023 tax loss as part of the total loss amount.  It found, based on Agent Maldonado's testimony, "that throughout 2023, Dr. Ulibarri engaged in the same type of conduct as he had done through years 2016 through 2022" by funneling his business income through the sham trusts.  Aplt. App. vol. 1 at 95.  The court further found that after receiving the target letter in 2023, Ulibarri could have, but did not, take steps to "address" or "stop[] the conduct that was at issue," lending support to the notion that Ulibarri's 2023 conduct was "part of the same course of conduct and common scheme or plan" as his ongoing tax scheme over the previous seven years.  *Id.* at 95–96.  We agree.

Under the guidelines, a sentencing court must aggregate the tax loss from the offenses of conviction, plus any acts or omissions that "were part of the same course of conduct or common scheme or plan as the offense[s] of conviction."  USSG § 1B1.3(a)(2); *see id.* § 3D1.2(d).  The guidelines further provide that "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated."  *Id.* § 2T1.1, cmt. n.2.

Here, as the district court found, Ulibarri used precisely the same method to disguise his business income in 2023 as he did between 2016 through 2022, with no meaningful differences or interruptions in using the unlawful tax shelter.  This fact alone supports the conclusion that Ulibarri's 2023 tax year conduct, while uncharged, was simply a continuation of his offenses of conviction.  *See id.*, cmt. n.2(B) (acts may be "part of the same course of conduct" where "the defendant uses a consistent

7

method to evade or camouflage income"); *cf. United States v. Maynard*, 984 F.3d 948, 959 (10th Cir. 2020) (affirming district court's tax loss aggregation where defendant had "exhibited a continuing and similar pattern of illegal conduct" by operating a series of fictitious corporations in the same way over a four-year period, "all with the goal of avoiding the payment of taxes owed").

Nevertheless, Ulibarri contends that his 2023 conduct was "clearly unrelated" to his 2016–2022 conduct because his actions during these periods were qualitatively different. In particular, he argues that while his offenses of conviction (tax evasion) required an *affirmative act* designed to mislead or conceal, his uncharged conduct (failure to file a tax return) was a fundamentally *passive act* arising from his "uncertain[ty] [about] how to proceed with his finances" after receiving the target letter. Aplt. Opening Br. at 9; *see id.* at 7–10. What's more, Ulibarri argues that because he did not file a tax return in 2023, the district court had to calculate the tax loss for that period using a "wholly different methodology" than the one it used for his offenses of conviction. *Id.* at 10. Neither argument convinces us that his 2023 conduct was "clearly unrelated" to the conduct preceding it. *See* USSG § 2T1.1, cmt. n.2. True enough, Ulibarri's tax violations were charged differently across tax years, and the resultant loss amounts were calculated differently across tax years. But these facts are immaterial, because *Ulibarri did not use the unlawful tax shelter differently across tax years*. Rather, as detailed above, he continued without deviation to implement the same scheme in 2023 as he had during the prior years, which consistently resulted in unpaid taxes each year.

On the record before us, the district court was amply justified in finding that Ulibarri's sham trust usage in 2023 was part of the same course of conduct. Accordingly, the district court did not clearly err in aggregating the loss amounts for tax years 2016 through 2023.

### 2. Calculation of 2023 tax loss

To calculate the 2023 tax loss, Agent Maldonado used the guidelines method for offenses involving failure to file a tax return, which treats the tax loss "as equal to 20% of the gross income . . . less any tax withheld or otherwise paid, unless a more accurate determination of the tax loss can be made." USSG § 2T1.1(c)(2)(A). Agent Maldonado first calculated Ulibarri's gross receipts as $976,223—IRS records showed that Ulibarri Family Dentistry had earned $1.6 million in 2023; of this amount, she was able to verify $976,223 in Ulibarri's bank records. Agent Maldonado then calculated the cost of goods deduction by examining Ulibarri's prior tax returns, finding that the average annual cost of goods was 17% of his gross receipts. Finally, Agent Maldonado subtracted the estimated 17% cost of goods deduction ($165,958) from the bank-verified gross receipts ($976,223), resulting in a gross income amount of $810,265. In turn, 20% of this gross income amount yielded a 2023 tax loss of $162,053.

On appeal, Ulibarri advances two reasons why Agent Maldonado's method of calculating the 2023 tax loss was "erroneous and speculative."[3] Aplt. Opening Br.

---

[3] The government suggests that Ulibarri's challenge to the district court's method of calculating the 2023 tax loss was not raised below; it thus invites us

at 10; *see id.* at 10–14.  First, he claims the gross receipts calculation was unreliable because the government could not determine with certainty whether Ulibarri Family Dentistry had earned $1.6 million (based on IRS records) or $976,223 (based on Ulibarri's bank records).  Second, he claims the cost of goods deduction was artificially low because it failed to account for various allowable business expenses.  We disagree on both fronts.

As the government correctly observes, the guidelines "do not require precision" in computing loss amounts.  Aplee. Resp. Br. at 22.  Rather, "the amount of the tax loss may be uncertain," so "the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts."  USSG § 2T1.1, cmt. n.1.  That is exactly what the district court did here.  On the figures presented, the court reasonably accepted the more conservative of the two gross receipts estimates ($976,223) as part of its tax loss calculation, which was determined from third-party payments to Ulibarri Family Dentistry that were *both* reported to the IRS and verified in corresponding bank records.  Ulibarri could have offered alternative evidence of his dental practice's earnings in 2023, but he did not.  Likewise, in the absence of other information that would have allowed for a "more accurate determination," the court reasonably accepted and used the estimated 17% cost of

---

to consider the matter waived or, at a minimum, to apply plain error review. We decline this invitation.  The record indicates—albeit not clearly—that Ulibarri did object to Agent Maldonado's calculation method, and that the district court nevertheless accepted and adopted this method.  *See* Aplt. App. vol. 1 at 62–63, 100–02; *see also* Aplee. Suppl. App. vol. 1 at 10.

goods deduction. *Id.* § 2T1.1(c)(2)(A). Ulibarri provided no alternative information about his deductible expenses in 2023. *See United States v. Bishop*, 291 F.3d 1100, 1116 (9th Cir. 2002) ("It is not the government's or the court's responsibility to establish the defendants' itemized deductions, if no itemized deduction information was offered by the defendants.").

All told, the district court's calculation of the 2023 tax loss relied on "reasonable estimate[s]" given the "available facts." USSG § 2T1.1, cmt. n.1. As such, this calculation was not clear error.

### B.    Sophisticated Means Enhancement

The district court imposed the sophisticated means enhancement over Ulibarri's objection, citing his undisputed use of multiple sham trusts to disguise his income. On appeal, Ulibarri claims this was error because the tax scheme was not "sophisticated," nor did it reflect elaborate planning or concealment on *his* part. In his view, he had merely purchased Conner's tax shelter services and relied on Conner's financial advice as a client. We are unpersuaded.

The guidelines provide for a two-level sentence enhancement if "the offense involved sophisticated means," defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." USSG § 2T1.1(b)(2) & cmt. n.5. "Sophisticated means, in other words, is conduct more complex than simply lying on a 1040 form." *United States v. Chappelle*, 78 F.4th 854, 862 (6th Cir. 2023) (internal quotation marks omitted).

11

On this record, we have no trouble concluding that Ulibarri's offense involved sophisticated means. As the district court found, he misused multiple financial accounts (including fictitious charitable entities) to hide more than $5 million in business income from the IRS. *See* USSG § 2T1.1(b)(2), cmt. n.5 ("[H]iding assets . . . through the use of fictitious entities [or] corporate shells . . . ordinarily indicates sophisticated means."); *see also United States v. Sorenson*, 148 F.4th 992, 998 (8th Cir. 2025) (affirming sophisticated means enhancement where defendant had "created shell companies, including fictitious religious entities . . . , to hide funds and pay personal expenses"). Ulibarri also used third parties to carry out his scheme by enlisting friends to serve as the sham trusts' grantors. And to disguise the trusts' unlawful purpose, he furnished false or misleading information to banks about his level of control over the trusts' funds. In short, Ulibarri went to elaborate lengths, far beyond garden variety dishonesty on his tax returns, to avoid paying his taxes. We therefore agree with the district court that the sophisticated means enhancement was warranted.

Ulibarri's effort to shift blame to Conner for the tax scheme's sophisticated nature is unavailing. This is so because Ulibarri's use of the trusts was not the product of passive or unwitting reliance on Conner's advice. On the contrary, despite clear, repeated warnings from his attorneys and accountants that his conduct was unlawful, Ulibarri continued for years to use Conner's tax shelter product to avoid paying over $1 million in income taxes. Furthermore, the guidelines' plain language requires only that Ulibarri's concealment "involved" sophisticated means, not that he

12

originated or devised those means himself.  Indeed, that Ulibarri "did not personally develop the tax-evasion scheme did not make it any easier for the IRS to detect his illegal conduct."  *United States v. Lewis*, 93 F.3d 1075, 1084 (2d Cir. 1996).

For these reasons, we conclude the district court's application of the sophisticated means enhancement was not error.

## II.    Substantive Reasonableness

We turn next to Ulibarri's argument that the district court abused its discretion in misapplying the § 3553(a) factors to impose an unduly long sentence.  A sentencing court must take care to fashion a sentence that is "sufficient, but not greater than necessary" to fulfill the statutory purposes of sentencing.  18 U.S.C. § 3553(a).  Our analysis therefore turns on whether "the length of the sentence is unreasonable given the totality of the circumstances in light of the 18 U.S.C. § 3553(a) factors."  *Haley*, 529 F.3d at 1311; *accord Maldonado-Passage*, 56 F.4th at 842.  "Our review is guided by the recognition that the district court is in a superior position to find facts and judge their import under § 3553(a) in the individual case."  *United States v. Rocha*, 145 F.4th 1247, 1260 (10th Cir. 2025) (internal quotation marks omitted).  Furthermore, "a within-Guidelines sentence is entitled to a presumption of substantive reasonableness on appeal."  *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1215 (10th Cir. 2008).

In determining a sentence, the district court must consider the sentencing factors set forth in § 3553(a):

> 1. The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> 2. the need for a sentence to reflect the seriousness of the crime, deter future criminal conduct, prevent the defendant from committing more crimes, and provide rehabilitation;
>
> 3. the sentences that are legally available;
>
> 4. the Sentencing Guidelines;
>
> 5. the Sentencing Commission's policy statements;
>
> 6. the need to avoid unwarranted sentence disparities; and
>
> 7. the need for restitution.

*United States v. Barnes*, 890 F.3d 910, 915 (10th Cir. 2018) (citing 18 U.S.C. § 3553(a)(1)–(7)).  Here, the district court did not abuse its discretion in considering these factors.

The court began by noting that it had "carefully considered the factors set forth in 18 U.S.C. [§] 3553(a)," even if it did not explicitly mention all of them.  Aplt. App. vol. 1 at 123.  Turning first to "the nature and circumstances of the[] offenses," the court recounted the structure of the abusive-trust tax scheme in detail.  *Id.* at 124; *see id.* at 124–28.  It noted that Ulibarri had pursued this scheme through 2023, even though he was warned as early as 2016 (and again in 2018, 2019, and 2020) that using trusts in this manner was illegal, and that a trust could not have an ownership stake in Ulibarri Family Dentistry under Colorado law.  The court acknowledged that while Ulibarri had no criminal history, his conduct was "not simply a single mistake," but was instead "a scheme that [he] perpetuated over a prolonged period of

14

time." *Id.* at 126. It further rejected the suggestion that "tax evasion[] is a victimless offense," since the loss of tax revenue negatively impacts the public. *Id.* at 129.

The court next discussed the various needs "to afford adequate deterrence," "to promote respect for the law," "to protect the public from [Ulibarri's] further crimes," "to provide a sentence" appropriate for Ulibarri's unique circumstances, and "to avoid unwarranted sentencing disparities" among similarly situated defendants. *Id.* It stressed that the sentence needed to reflect "the seriousness of this particular offense," reiterating that while Ulibarri had no criminal history, he persisted in implementing the tax scheme despite clear notice that his conduct was illegal. *Id.*; *see id.* at 130. The court further emphasized that the sentence needed to deter other would-be tax evaders by signaling "that fraud to the federal government is [not] some sort of faceless crime with no consequence." *Id.* at 130. Based on these considerations, the court found "no reason to depart from the sentencing guidelines," and thus opted to "impose a sentence within the advisory guideline range" of 41 months' imprisonment. *Id.* at 131.

We owe "substantial deference to the district court" with respect to the above § 3553(a) analysis, *United States v. Guevara-Lopez*, 147 F.4th 1174, 1184 (10th Cir. 2025) (internal quotation marks omitted), and we presume that its within-guidelines sentence is reasonable, *Alapizco-Valenzuela*, 546 F.3d at 1215. Ulibarri fails to rebut this presumption by showing that the § 3553(a) factors were applied unreasonably.

Here, Ulibarri suggests that the district court did not give adequate weight to certain factors. These include: (i) the conviction has compromised both his personal

15

relationships and professional reputation; (ii) the conviction alone functions as general deterrence without need for a custodial sentence; (iii) the 41-month imprisonment term reflects unfair sentencing disparity,[4] since similarly situated defendants often receive shorter sentences, and Ulibarri was the only one of Conner's 200 clients to face prosecution for the same conduct; and (iv) the $1,616,087 restitution payment will be delayed by Ulibarri's inability to work as a dentist while incarcerated.

The record before us reflects that every one of these factors was argued at length by the parties during the sentencing hearing. In effect, by raising them again on appeal, Ulibarri "simply asks us to re-weigh factors already presented to the district court—something we cannot and will not do." *United States v. Budder*, 76 F.4th 1007, 1017 (10th Cir. 2023). Indeed, "reweighing the [§ 3553(a)] factors is beyond the ambit of our review" for substantive reasonableness, since we may not disturb the weight the district court accorded those factors. *United States v. Lawless*, 979 F.3d 849, 856 (10th Cir. 2020). "For our purposes, it is enough that the district court thoroughly weighed each of these § 3553(a) factors, reached a logical conclusion, and detailed its reasoning." *Id.* While the district court had discretion to

---

[4] The district court appears to have credited the government's assertion that Ulibarri's prosecution and sentencing were warranted because his conduct "stood apart from the rest" of other similarly situated defendants. Aplt. App. vol. 1 at 112. This was so because, unlike Conner's clients and other tax evaders generally, Ulibarri ignored explicit warnings from multiple professional advisors over many years and, in so doing, caused a remarkably higher-than-average tax loss. *See id.* at 111–14, 128.

grant Ulibarri a downward variance based on his community standing and lack of criminal history, it did not abuse its discretion by declining to do so.

Thus, we conclude the sentence imposed here—which is within the guidelines range and presumptively reasonable—was not substantively unreasonable.

## CONCLUSION

In light of the foregoing analysis, we AFFIRM.